UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Barry W. Chapin,<br><div align="right">Appellant</div><br>v.<br><br>Harold Murphy, Esq., as he is chapter 7<br>bankruptcy trustee,<br><div align="right">Appellee</div> | BANKRUPTCY APPEAL<br><br>Case No. 1:20-cv-11931-GAO |

<u>INDEX TO EXHIBITS TO MOTION FOR STAY PENDING APPEAL</u>

1   Motion for stay filed in the bankruptcy court ........................................................ 1
2.   Trustee's objection to stay ........................................................................................ 6
3.   Trustee's motion to sale ........................................................................................... 15
4.   Debtor's objection to sale ........................................................................................ 35
5.   Trustee's memorandum in support of sale ............................................................... 39
6.   Debtor's sur-reply ..................................................................................................... 46
7.   Transcript of September 29, 2020, hearing on motion to sell ............................... 53

UNITED STATES BANKRUPTCY COURT
EASTERN DIVISION, DISTRICT OF MASSACHUSETTS

In re:

      Barry Wisner Chapin

                  Debtor

Chapter 7
Case No.  20-10324-JEB

MOTION FOR STAY PENDING APPEAL
EMERGENCY DETERMINATION REQUESTED

NOW COMES Barry Wisner Chapin, by his attorney, and respectfully moves the Court pursuant to Fed. R. Bankr.P. 8005 for a stay pending appeal in this matter of the order granting the trustee's motion to sell his homestead notwithstanding the absence of any discernable benefit to the estate.  Given that the trustee has scheduled the sale for around November 16, emergency determination is appropriate.  In support of his motion, Chapin states as follows:

1. Chapin commenced this case on February 4, 2020.
2. Harold Murphy, Esq., was appointed as interim trustee and continues to serve as trustee.
3. Property of the estate includes Chapin's home – a condominium apartment at 34 Fairfield Street, Boston.
4. Schedule D indicates that title to the property is encumbered by a number of mortgages and other liens.  The validity of those encumbrances has not been challenged as of this date, nor has the amount of the claims been verified.
5. Schedule A/B indicates that there are four other condominium units included in property of the estate.  The trustee has sold, or has sales pending, of those units.
6. On July 27, 2020, the trustee filed a motion for leave to sell the debtor's homestead.  The debtor objected to the sale, citing the trustee's pending adversary proceeding respecting marshalling of claims by the various lienholders as well as the debtor's state-law homestead exemption.
7. In addition, Chapin asserted that since the trustee essentially admitted that there is no equity in the property based on the face amount of the liens, selling his homestead was barred by the First Circuit's decision in In re Traverse, 753 F. 3d 19 (1st Cir. 2014).
8. After several hearings and briefing, the court allowed the motion on October 9.
9. Chapin filed a Notice of Appeal timely thereafter.

Argument

A party requesting a stay pending appeal must demonstrate that:
      (1) there is a likelihood of success on the merits of the appeal;
      (2) the moving party will suffer irreparable harm if a stay is not granted;

(3) the harm to the moving party if the stay is not granted is greater than the injury to the opposing party if the stay is granted; and

(4) the public interest would not be adversely affected by the issuance of the stay.

In re Miraj, 201 BR 23 (Bankr. D. Mass. 1996).

<u>Likelihood of success on the merits</u>

"The sine qua non of this four-part inquiry is likelihood of success on the merits: if the moving party cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity." <u>Esso Standard Oil (Puerto Rico) v. Monroig-Zayas</u>, 445 F. 3d 13 (1st Circuit 2006). Not all of the factors are given equal weight, but without a "strong case", a stay is unlikely to be granted.

Chapin understands this court's decision to be, essentially, that <u>Traverse</u> does not control. Chapin respectfully disagrees, in part because it is binding and in part because the factual differences between <u>Traverse</u> and this case do not warrant a different result. *Compare* <u>In re Bishop</u>, 554 BR 558, fn. 5 (Bankr. D. Me. 2016). In <u>Bishop</u>, a key distinction was the fact that the trustee was seeking to sell the interest of the debtor <u>and</u> a co-owner. Although no party raised <u>Traverse</u>, the court evidently felt compelled to discuss it in context of the motion before him; it was not a sale motion, so the court's comments about <u>Traverse</u> were dicta, but the court seemed to be signaling reservations about whether a sale would be allowed. *See also* <u>In re Rivera Mercado</u>, 599 BR 406 (Bankr. App. Panel, 1st Cir. 2019) (finding that <u>Traverse</u> did not control because of the differences between Puerto Rico law and Massachusetts law).

The majority of courts in this district appear to have held that <u>Traverse</u> presents a nearly insuperable impediment to trustees selling property when there will be no perceivable benefit to the unsecured creditors. *See, e.g.,* <u>In re Shubert</u>, 535 BR 488 (Bankr. D. Mass. 2015); <u>In re Dupuis</u>, 524 BR 1 (Bankr. D. Mass. 2015); <u>In re Spodris</u>, 516 BR 196 (Bankr. D. Mass. 2014)

Of particular concern to the trustee, most likely, is the District Court's holding in <u>Internal Revenue Service v. Baldiga, Dist. Court</u>, (Bankruptcy Appeal No. 20-10156-NMG, D. Mass., July 16, 2020), stat8ng that "Pursuant to § 330(a)(4)(A), compensation cannot be awarded for services that are not reasonably likely to benefit the estate, i.e., when they will not likely generate value for the estate's unsecured creditors." Thus the trustee cannot be compensated for his work in bringing about this sale, given his admission that there is no perceivable benefit to unsecured creditors.

While Chapin accepts that this court, like Judge Boroff in <u>Miraj</u>, has confidence in the rectitude of its decision, Chapin respectfully suggests that his appeal is not frivolous, *see generally* <u>United States v. Joseph</u>, Case No. 19-10141-LTS, Dist. Court, D. Massachusetts October 2, 2020, and he has a substantial case, in view of the foregoing. He therefore asserts that he has a reasonable likelihood of success on appeal.

<u>The remaining factors</u>

*(2) the moving party will suffer irreparable harm if a stay is not granted;*

There can be little doubt that Chapin will suffer irreparable harm if a stay is not granted because the trustee will be free to proceed with the sale. That will render him homeless since as far as the undersigned knows, Chapin remains unemployed and without any income – certainly

not enough to rent another apartment in Boston. *See* In re Strayton, 360 BR 8 (Bankr. Court, D. Mass. 2007) (finding that the plaintiff had a reasonable likelihood of prevailing and granting a preliminary injunction because, inter alia, denying an injunction would allow the mortgagee to foreclose, which would be irreparable harm).

*(3) the harm to the moving party if the stay is not granted is greater than the injury to the opposing party if the stay is granted;*

To paraphrase Judge Somma in Strayton, the harm to the debtor far outweighs any harm to the trustee since the real property is not going anywhere, so to speak, and the mortgagee's motion for relief from stay is not scheduled for hearing until December.  Even if that motion is granted, it will be several months thereafter before any foreclosure could take place.  Thus granting a stay would do no discernable injury to the trustee or any other party and if the decision is affirmed, the trustee can proceed with the sale. Furthermore, putting this sale on hold will enable the trustee to focus on the marshalling adversary proceeding and carefully review the claims to determine whether any are objectionable, a process that should not await completion of liquidation of assets. The delay would also benefit Chapin since it would give him a further opportunity to find work and a new place to live.

*(4) the public interest would not be adversely affected by the issuance of the stay.*

There is no discernable public interest at issue here.  On the contrary: the public interest supports helping people stay in their homes, otherwise Congress would not have enacted non-bankruptcy loan modification programs, or even chapter 13 of the Bankruptcy Code; *see* In re Moore, 577 BR 836 (Bankr. D. Mass.2017) ("The debtors' desire to save their home is not opprobrious, particularly when as an alternative to liquidation they seek to attempt to propose a payment plan under chapter 13.")  More generally, the bankruptcy code itself was enacted to help people get a "fresh start", financially.  Marrama v. Citizens Bank of Massachusetts, 549 US 365 (2007).  To be sure, this is a chapter 7 case, not a chapter 13 case, but the point remains; a debtor's desire to retain his home or at least get the benefit of the homestead exemption is not unreasonable.  It would also enhance his opportunity for a fresh start.

Granting a stay pending appeal will not adversely affect any public interest.

<u>CONCLUSION</u>

For all of the foregoing reasons, the court should grant a stay pending appeal.

October 26, 2020

Respectfully submitted,
Barry Wisner Chapin
By debtor's attorney,

/S/   *David G. Baker*
David G. Baker, Esq.
236 Huntington Avenue Room 317
Boston, MA    02115
617-340-3680
BBO# 634889

Emergency Motion Exhibits, Page 3 of 71

<u>CERTIFICATE OF SERVICE</u>
The undersigned hereby states upon information and belief that on the date above, the within motion will be served upon all persons and entities named below by the court's CM/ECF system.

/s/   *David G. Baker*
David G. Baker

Ryan M. Aboud on behalf of Creditor Ocean City Lofts Condominium Association, Inc.
raboud@bapflaw.com

William J. Amann on behalf of Interested Party 104 Andover Court, LLC
wamann@ba-lawgroup.com, cshaw@ba-lawgroup.com

Patrick Beaton on behalf of Creditor Freedom Mortgage Corporation
pdb@dgandl.com, mbd@dgandl.com; bd@dgandl.com; bs@dgandl.com

Christopher M. Condon on behalf of Trustee Harold B. Murphy
ccondon@murphyking.com, imccormack@murphyking.com; ecf-06e49f159ba0@ecf.pacerpro.com

Kathleen R. Cruickshank on behalf of Trustee Harold B. Murphy
kcruickshank@murphyking.com, bankruptcy@murphyking.com; rguarino@murphyking.com; ecf-f3829d9f3bd3@ecf.pacerpro.com

Elizabeth Dailey on behalf of Creditor Freedom Mortgage Corporation
bd@dgandl.com, rjl@dgandl.com; mbd@dgandl.com; bs@dgandl.com

Michael Denham on behalf of Creditor Massachusetts Department of Revenue, Child Support Enforcement Division
denhamm@dor.state.ma.us, csebankruptcy@dor.state.ma.us; oneilld@dor.state.ma.us

Christine E. Devine on behalf of Creditor RH Fund XX, LLC
cdevine@mirickoconnell.com, bankrupt@mirickoconnell.com

Andrew W. Evans on behalf of Creditor Joanne Graf
andrew@evansevanslaw.com, lmdevansevanslaw@gmail.com; g36335@notify.cincompass.com, R56960@notify.bestcase.com; r56960@notify.bestcase.com; susan@evansevanslaw.com

John Fitzgerald
USTPRegion01.BO.ECF@USDOJ.GOV

Kate P. Foley on behalf of Creditor RH Fund XX, LLC
kfoley@mirickoconnell.com

Kevin Gaughen, Jr. on behalf of Creditor Hingham Institution for Savings
kevingaughenjr@gaughenlane.com

Andrew S. Harmon on behalf of Creditor Freedom Mortgage Corporation
mabk@harmonlaw.com, aharmon@ecf.courtdrive.com

Dean Lennon on behalf of Creditor Carlton Gardens Condominium Trust
dlennon@meeb.com

4

Reneau J. Longoria on behalf of Creditor Freedom Mortgage Corporation
rjl@dgandl.com,  bd@dgandl.com; mbd@dgandl.com; bs@dgandl.com

Shawn Lu on behalf of Plaintiff Harold B. Murphy, Chapter 7 Trustee
slu@murphyking.com,  dmeyer@murphyking.com; ecf-8b8439714ea0@ecf.pacerpro.com

Harold B. Murphy
mxc@hanify.com,  ma33@ecfcbis.com; dkonusevska@murphyking.com

John B O'Donnell on behalf of Creditor Massachusetts Department of Revenue
odonnellj@dor.state.ma.us

Raymond M. Patella on behalf of Creditor Ocean City Lofts Condominium Associates, Inc.
rpatella@kraemerburns.com

Richard B. Reiling on behalf of Creditor Linda Reyes-Flores
Reilinglaw@aol.com,  richard@bottonereiling.com

Bradley Sarnell on behalf of Creditor United States Of America
Bradley.a.sarnell@usdoj.gov,  northern.taxcivil@usdoj.gov

Ellen A. Shapiro on behalf of Creditor Board of Trustees of 32-34 Fairfield Street Condominium
Trust
eshapiro@meeb.com

David J Shlansky on behalf of Creditor Ivenix, Inc.
katherine.varnum@slglawfirm.com

Jacob T. Simon on behalf of Interested Party 104 Andover Court, LLC
jacob@simonlawma.com,  luis@simonlawma.com; nmills@highrocklaw.com

Emergency Motion Exhibits, Page 5 of 71

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS
### EASTERN DIVISION

|  |  |
|---|---|
| In re: | ) |
|  | ) |
|  | )      **Chapter 7** |
| **BARRY WISNER CHAPIN** | ) |
|  | )      **Case No. 20-10324 JEB** |
| Debtor. | ) |
|  | ) |

## OBJECTION BY CHAPTER 7 TRUSTEE TO DEBTOR'S MOTION FOR STAY PENDING APPEAL

Harold B. Murphy, as he is the Chapter 7 Trustee (the "Trustee") of the bankruptcy estate (the "Estate") of Barry Wisner Chapin (the "Debtor"), submits this objection to the Debtor's *Motion for Stay Pending Appeal* [doc. no.385] (the "Stay Motion") with respect to the Court's order entered on October 9, 2020 [doc. no. 358] (the "Sale Order") authorizing the Trustee's motion to sell the Estate's interest in the real property located at 34 Fairfield Street, Apartment 2, Boston, Massachusetts (the "Fairfield Property").

### Background

1.      On February 4, 2020 (the "Petition Date"), the Debtor commenced this case by filing a voluntary petition pursuant to Chapter 7 of the United States Bankruptcy Code.

2.      The Trustee is the duly appointed Chapter 7 Trustee of the Debtor.

3.      As of the Petition Date, the Debtor owned three properties in Massachusetts, the Fairfield Property, 147 Milk Street, Unit 15, Westborough, Massachusetts ("Unit 15"), and 155 Milk Street, Unit 3, Westborough, Massachusetts ("Unit 3") and one property in Florida, 228 NE 1st Street, #406, Delray Beach, Florida (the "Astor Condo") (collectively, the "Properties"); and had a claim with respect to a pre-petition foreclosure by a condominium association of another

property in Florida located at 185 Northeast Fourth Avenue, No. 210, Delray Beach, Florida (the

"Ocean City Condo").[1]

      4.      The Internal Revenue Service (the "IRS") asserts liens against the Properties. The

Massachusetts Department of Revenue Child Support Division (the "DOR") asserts liens against

the Properties in Massachusetts.  In the ninety days prior to the Petition Date, Ferris

Development Group, LLC ("Ferris") recorded mortgages (the "Ferris Mortgages") against the

Properties.[2]

      5.      On April 10, 2020, the Trustee filed the Complaint [doc.no. 54] (the "Marshaling

Action") commencing an adversary proceeding and seeking, among other things, that pursuant to

the equitable doctrine of marshaling, to compel the IRS and the DOR to marshal by enforcing

their respective liens against the Fairfield Property, so as to maximize the value of the Estate's

interest in the Debtor's remaining assets.

      6.      The Trustee has sold Unit 15, Unit 3 and the Astor Condo and is holding net sale

proceeds after satisfaction of the first mortgages, real estate taxes and closing costs, in the

approximate amount of $375,000 (the "Sale Proceeds").  The Sale Proceeds are subject to

multiple liens, including the liens of the IRS, the DOR and Ferris, and the Ocean City Condo is

subject to the liens of the IRS and Ferris.

      7.      The Debtor scheduled the value of the Fairfield Property at $813,000.

      8.      The Debtor resides at the Fairfield Street Property and has asserted an estate of

homestead with respect to the Fairfield Property.

---

[1] The Trustee has commenced an adversary proceeding [Adv. Proc. 20-01063] contesting, among other things, the validity of the foreclosure sale.

[2] The Trustee has commenced an adversary proceeding [Adv. Proc. 20-01050], seeking, among other things, to avoid the Ferris Mortgages as preferential.

Emergency Motion Exhibits, Page 7 of 71

9.      The Fairfield Property is subject to the following mortgages and liens, in the

aggregate approximate amount of $1.1 million, that are senior to the Debtor's claim of

homestead:

(i)      lien of 32-34 Fairfield Street Condominium Association for unpaid condominium
fees in the asserted amount of $5,303;

(ii)     mortgage in favor of Hingham Institution for Savings in the asserted amount of
$569,403 as of September 1, 2020;

(iii)    lien of the Massachusetts Department of Revenue tax division for unpaid income
taxes for 2015 in the asserted amount of $20,722 as of the Petition Date;

(iv)     lien of the IRS for the Debtor's unpaid income taxes in the asserted amount of
$304,039.44 as of the Petition Date;

(v)      lien of the Massachusetts Department of Revenue tax division for the Debtor's
wage and labor law violations as the responsible person of Chapin Intellectual
Property Law LLC in the asserted amount of $10,493 as of the Petition Date;

(vi)     lien of the Massachusetts Department of Revenue Child Support Enforcement
Division for overdue child support in the asserted amount of $91,381.05 as of the
Petition Date;

(vii)    mortgage in favor Ferris in the asserted amount of $94,630.58 as of the Petition
Date.

10.     Because there are no funds in the Estate available to repair and clean the unit, the

Trustee's real estate broker estimates that the property in its current condition is likely to sell for

no more than $800,000.

11.     On July 27, 2020, the Trustee filed a *Motion by Chapter 7 Trustee for Entry of an*

*Order Authorizing the Sale of Real Property by Public Auction Free and Clear of Liens, Claims,*

*Interests and Encumbrances (34 Fairfield Street, Apt. 2, Boston, Massachusetts)* (the "Sale

Motion"), by which the Trustee sought to sell the Fairfield Property.

12.     The Debtor filed an objection to the Sale Motion.

3

13.    On October 9, 2020, following briefing by the parties, the Court entered the Sale

Order granting the Sale Motion, and finding, among other things, that notwithstanding the

arguments raised by the Debtor, (i) the Marshaling Action need not be determined prior to the

Trustee's sale because regardless of the outcome, there was little or no equity available for the

Debtor's homestead; and (ii) *DeGiacomo v. Traverse*, 753 F.3d 19 (1st Cir. 2014) does not

prevent the Trustee from selling the Fairfield Property because the Trustee's sale will maximize

the value and benefit to the Estate by increasing the potential for unsecured creditors to receive a

divided through the reduction on the lienholders' claims against other properties.

14.    The Trustee has scheduled a public sale of the Fairfield Property for November

18, 2020 (the "Sale Date") and is working with his Court approved auctioneer and real estate

broker to market and sell the Fairfield Property.  As part of that effort, the Trustee has requested

that the Debtor cooperate with the Trustee and vacate the Property no later than ten days after the

Sale Date.  The Debtor has failed to respond.  As such, on October 26, 2020, the Trustee filed a

motion seeking entry of an order compelling the Debtor to cooperate with the Trustee and to

vacate the Fairfield Property following the sale. The Court has set this motion for hearing.

15.    Hingham Institution for Savings ("Hingham"), the holder of the first mortgage

against the Fairfield Property, has a pending motion seeking relief from the automatic stay by

which it seeks to foreclose upon the Fairfield Property (the "Motion for Relief").  According to

the Motion for Relief, Hingham was owed approximately $569,403 as of September 1, 2020, the

Debtor has not paid Hingham since November of 2018 and is similarly not paying real estate

taxes or condominium fees.  By agreement with the Trustee, Hingham has postponed the hearing

on its Motion for Relief to a date that is after the Sale Date.

4

16.     On October 18, 2020, the Debtor filed a Notice of Appeal with respect to the Sale

Order.

17.     On October 26, 2020, the Debtor filed the Stay Motion, seeking a stay of the Sale

Order pending resolution of his appeal.

## Objection

18.     The Trustee objects to the Stay Motion because, for the reasons set forth herein,

the Debtor has failed to demonstrate grounds for a stay of the Sale Order pending his appeal.

## Argument

### A.     The Debtor Has Failed to Demonstrate Grounds for a Stay of the Sale Order Pending Appeal

Courts considering a motion to stay pending appeal apply the same standard that must be

met for issuance of a preliminary injunction.  *In re Elias*, 182 Fed. Appx. 3, at *1 (1st Cir. 2006)

(traditional four part test for preliminary injunctions to be applied to requests for stay pending

appeal); *In re Miraj and Sons, Inc.*, 201 B.R 23, 26 (Bankr. D. Mass. 1996) (Boroff, J.) (same).

Under the four part test, the movant must demonstrate:

i)      There is a likelihood of success on the merits of the appeal;
ii)     The moving party will suffer irreparable harm if a stay is not granted;
iii)    The harm to the moving party if the stay is not granted is greater than the
        injury to the opposing party if the stay is granted; and
iv)     The public interest would not be adversely affected by the issuance of the
        stay.

*Miraj*, 201 B.R. at 26; *In re Morgan*, 2011 WL 1168297, at *6 (Bankr. D. Mass. March 29, 2011)

(Feeney, J.).  The movant seeking a stay bears a heavy burden.  *In re DJK Residential, LLC*, 2008

WL 650389, at *2 (S.D. N.Y. March 7, 2008) ("The burden on the movant is a heavy one."); *In re*

*Baker*, 2005 WL 2105802, at *3 (E.D. N.Y. August 31, 2005) (citing *In re Gucci*, 105 F.3d 837,

840 (2d Cir. 1997) ("Stays pending an appeal from Bankruptcy Court should only be granted in

limited circumstances.").

Emergency Motion Exhibits, Page 10 of 71

A request for stay should be denied if any of the four factors are not satisfied.  *In re Power Recovery Systems, Inc.*, 950 F.2d 798, 804, n. 31 (1st Cir. 1991) ("Failure to meet even one of the criteria justifies denial."); *Morgan*, 2011 WL 1168297, at *6 ("All four prongs must be satisfied . . . Failure to meet the four prongs dooms the motion.") (citations omitted).  Here, the Debtor cannot make the required showing as to any of these four elements, therefore this Court should deny the Stay Motion.

### 1.    There is little likelihood that the Debtor will succeed on the merits of the appeal

The Debtor's reliance upon *DeGiacomo v. Traverse*, 753 F.3d 19 (1st Cir. 2014) to establish that he is likely to succeed on the merits of his appeal is misplaced.  First, in *Traverse*, there was equity in the property to which the debtor's homestead could attach, and the debtor was current with payments to the two mortgage holders on the property.  Neither is true here.  Here, it is undisputed that the amount of the unavoidable liens against the Fairfield Property exceed its value, such that there is no equity to which the Debtor's asserted homestead can attach.  Further, the Debtor is in default of his obligations with respect to the multiple liens on the Fairfield Property, including to Hingham, and the Debtor has no ability to cure the arrearages or pay the multiple ongoing obligations to lienholders against the Fairfield Property.

Second, unlike *Traverse*, where the bankruptcy estate would receive no benefit from the sale and the trustee conceded that he would not attempt to sell the debtor's property but for the mortgage he had avoided, here, the Trustee's sale of the Fairfield Property will benefit the Estate because it will enable the property to be sold for its maximum value and will permit the Trustee to promptly pay lienholders with liens against both the Fairfield Property, the Sale Proceeds, and the Ocean City Condo, thereby increasing the funds available to unsecured creditors.  *Traverse*

Emergency Motion Exhibits, Page 11 of 71

simply does not apply here because there is no equity in the homestead and there will be a benefit to the Estate by the reduction in liens against other properties.

Other cases cited by the Debtor are readily distinguishable. In *Agin v. PNC Mortg. (In re Spodris)*, 516 B.R. 196 (Bankr.D.Mass. 2014), there was no equity in the property to which a homestead could attach, but the debtor was current with the mortgage, so the property was not going to be foreclosed upon. In *Agin v. Green Tree Servicing, LLC (In re Shubert)*, 535 B.R. 488 (2015), there was equity in the property to which the homestead could attach and the debtor was current with the mortgage, and as such, the property was not going to be foreclosed upon. In *In re Dupuis*, 524 B.R. 1 (Bankr.D. Mass 2015), there was equity in the property to which a homestead could attach, and while the debtor had defaulted on the avoided mortgage, the mortgage was against the wrong property, such that no foreclosure was in prospect. In none of the cases would the sale of the properties create a benefit to the estate by paying down liens on other assets of the estate.

**2.    The Debtor will not suffer irreparable harm if a stay of the Sale Order is not granted**

The Debtor will not suffer irreparable harm if a stay is not granted because regardless of whether the sale goes forward, the Debtor will not be able to retain the Fairfield Property. If the Trustee's sale is not permitted to go forward, there be no basis to deny the Motion for Relief because the Debtor has not paid the first mortgage, the condominium fees or the real estate taxes in approximately two years. He has no income and no ability to service the debt on the Fairfield Property. Moreover, the Debtor has no ability to pay the other liens against the Fairfield Property.

7

3.    **The Estate will Suffer More Harm Than the Debtor if the Order Approving the Sale is Stayed**

The Estate will suffer more harm than the Debtor if the order approving the Trustee's sale is stayed, because the Fairfield Property will be foreclosed upon, the recovery will be reduced and there will be delays in the payment of the proceeds to junior lienholders, whose liens continue to accrue interest against the Sale Proceeds and the Ocean City Condo, thereby diminishing the Estate's interest in these assets. Not only will the Fairfield Property be sold at a distressed price at foreclosure, Hingham will incur additional expenses, such as advertising and legal fees, which will be added to its claim. That monetary loss to the Estate would be greater than the harm to the Debtor, because regardless of whether the Court stays the order allowing the sale, he will be required to vacate the Fairfield Property.

4.    **The public interest is not impacted by the denial of a stay**

There is no public interest that is impacted by the Court's denial of the Stay Motion. Under the circumstances of this case, where the Fairfield Property will be sold either by the Trustee's sale or at a foreclosure sale, it is not contrary to the public interest to permit the Trustee to sell the Fairfield Property. There is a greater public interest in the Fairfield Property being sold in an orderly fashion to maximize the return to creditors.

B.    **The Debtor Should Be Required to Post a Bond**

In order to obtain a stay, the Debtor should be required to post a supersedeas bond or other security to cover ongoing expenses of the Fairfield Property that accrue during the appeal. Fed.R.Bankr.P. 8007(a). The amount is within the Court's discretion, 10 *Collier on Bankruptcy* ¶ 8007.09[1] (Richard Levin & Henry J. Sommer eds., 16th ed. 2020), citing *Farmer v. Croker*

8

*Nat'l Bank (In re Swift Aire Lines, Inc.),* 21 B.R. 12 (B.A.P. 9th Cir. 1982), and should be

sufficient to protect the rights of the party that prevailed in the bankruptcy court. *Collier*, citing

*In re Roussos*, 2017 Bankr. LEXIS 544 (Bankr.C.D. Cal. Feb. 27, 2017).

     The amount of the security the Debtor should be required to post is $42,000 or twelve

months of monthly mortgage payments, condominium fees, and real estate taxes.[3]

     WHEREFORE, for the reasons set forth herein, the Trustee requests that the Court enter

an order denying the Stay Motion and granting the Trustee such other relief as is just and proper.

     Respectfully submitted,

     HAROLD B. MURPHY,
     Chapter 7 Trustee of Barry Chapin.

     By his attorneys,

     */s/Kathleen R. Cruickshank*
     Harold B. Murphy (BBO#326610)
     Kathleen R. Cruickshank (BBO #550675)
     Murphy & King Professional Corporation
     One Beacon Street, 21st Floor
     Boston, Massachusetts  02108-3107
     Telephone:  (617) 423-0400
     Email: kcruickshank@murphyking.com

Dated:  November 2, 2020

---

[3] The Debtor has filed a Motion for Certification for Direct Appeal to the First Circuit Court of Appeals [doc. no. 386].  It is likely that any decision on the Debtor's appeal will take approximately twelve months.

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | **Chapter 7** |
| **BARRY WISNER CHAPIN** | ) | |
| | ) | **Case No. 20-10324 JEB** |
| Debtor. | ) | |
| | ) | |

**MOTION BY CHAPTER 7 TRUSTEE FOR ENTRY OF AN ORDER AUTHORIZING
THE SALE OF REAL PROPERTY BY PUBLIC AUCTION SALE, FREE AND CLEAR
OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES**
*(34 Fairfield Street, Apt. 2, Boston, Massachusetts)*

Harold B. Murphy as he is the Chapter 7 Trustee (the "Trustee") of the bankruptcy estate

(the "Estate") of Barry Wisner Chapin (the "Debtor" or "Chapin"), respectfully requests

authority to sell by public auction sale (the "Public Sale") all of the Estate's right, title, and

interest in certain real property located at 34 Fairfield Street, Apartment 2, Boston,

Massachusetts, as further described herein (the "Real Property"). The terms of the Public Sale

are more particularly described below. In further support of this motion (the "Sale Motion"), the

Trustee states as follows:

### I.     Background

1.     On February 4, 2020 (the "Petition Date"), the Debtor commenced this case by

filing a voluntary petition pursuant to Chapter 7 of the United States Bankruptcy Code.

2.     The Trustee is the duly appointed Chapter 7 Trustee of the Debtor.

3.     As of the Petition Date, the Debtor owned or had previously owned multiple

properties in Massachusetts and in Florida. The Internal Revenue Service (the "IRS") asserts

liens on all of the Debtor's real properties. The Massachusetts Department of Revenue (the

"DOR") asserts liens on the Debtor's properties in Massachusetts. In the ninety days prior to the

Emergency Motion Exhibits, Page 15 of 71

Petition Date, Ferris Development Group, LLC ("Ferris") obtained liens on the Debtor's real properties in Massachusetts and Florida by recording mortgages.

4.    On April 10, 2020, the Trustee filed the Complaint [doc.no. 54] commencing an adversary proceeding (the "Marshaling Action") and seeking, among other things: (i) pursuant to the equitable doctrine of marshaling, to compel the IRS and the DOR to marshal by enforcing their respective liens against the Real Property, so as to maximize the value of the Estate's interest in the Debtor's remaining properties; and (ii) to avoid the mortgages granted by the Debtor to Ferris on each of his properties as preferential pursuant to 11 U.S.C. § 547 while preserving the liens created by the mortgages for the benefit of the Estate pursuant to 11 U.S.C. §§ 550 and 551.

## II.    The Real Property

5.    As of the Petition Date, the Debtor was the owner of the Real Property, which consists of a 764 square foot, two-bedroom, one-bathroom condominium unit located in the 32-34 Fairfield Street Condominiums and identified as 34 Fairfield Street, Apartment 2, Boston, Massachusetts.  The Real Property is located in the Back Bay area of Boston and is within walking distance of public transportation, colleges, shopping centers, parks and museums.

## III.    Relief Requested

6.    Pursuant to Section 363 of the Bankruptcy Code, Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") 2002 and 6004, and Massachusetts Local Bankruptcy Rule 6004-1, the Trustee requests authorization to conduct a Public Sale of the Real Property free and clear of liens, claims, encumbrances, and interests.  In connection therewith, the Trustee requests a finding that all purchasers thereof at the Public Sale are good faith purchasers.

Emergency Motion Exhibits, Page 16 of 71

7.      The Real Property is to be sold in "as is" and "where is" condition. Further, the Trustee is not making any representations or warranties whatsoever, either express or implied, with respect to the Real Property.

## A.      The Trustee is Authorized to Sell the Real Property

8.      The Bankruptcy Code provides that a trustee or debtor-in-possession "after notice and a hearing, may use, sell, or lease other than in the ordinary course of business, property of the estate."  11 U.S.C. §363(b)(1).  Property of the estate "consist of all of the interests in property, legal and equitable, possessed of the debtor at the time of filing, as well as those interests recovered or recoverable through transfer and lien avoidance provisions." *Owen and Owen*, 500 U.S. 305, 308, 111 S.Ct. 1833, 114 L.Ed. 2d 3501 (1991).

9.      Bankruptcy courts have approved the disposition of debtors' assets pursuant to Section 363(b) where the transactions represent the exercise of reasonable business judgment. *See In re Martin*, 91 F.3d 389, 396 (3d Cir. 1996); *In re Lionel Corp.*, 722 F.2d 1063, 1070 (2d Cir. 1983); *see also Stephens Indus. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986); *In re Thomas McKinnon Securities, Inc.*, 120 B.R 301 (Bankr. S.D.N.Y. 1990); *In re Coastal Indus., Inc.*, 63 B.R 361,367 (Bankr. N.D. Ohio 1986); *In re Baldwin United Corp.*, 43 B.R 888 (Bankr. S.D. Ohio 1984).

10.      As is set forth below, on its face, there appears to be no equity in the Real Property which could inure to the benefit of the Estate; however, the Trustee's anticipates that his ongoing sales of the Estate's properties in Florida and Massachusetts, which are subject, in many cases, to duplicate liens of the IRS and the DOR and the duplicate (and assertedly avoidable) mortgages of Ferris, the Trustee believes in his business judgement that the sales in the aggregate, including the sale of the Real Property, will generate a return for holders of unsecured claims.  Moreover, any perceived lack of equity in a debtor's property does not

Emergency Motion Exhibits, Page 17 of 71

deprive the Trustee the right to sell property provided that he articulates a business reason for conducting the sale. *In re Mannone*, 512 B.R. 148, 149-150 (Bankr.E.D.N.Y. 2014). The Trustee's business judgment is entitled to deference. *Id* at 150.

11.     The Debtor resides at the Real Property and has claimed an estate of homestead with respect to the Real Property; however, the Debtor's homestead does not provide him with any possessory interest in the Property and does not attach to any economic interest in the Real Property. See, e.g., *In re Peirce*, 483 B.R. 368, 376 (Bankr.D.Mass. 2012) ("Mass. Gen.Laws ch. 188 only protects the owners' interest in the home to the extent of the monetary exemptions."); *In re Gebhart*, 621 F.3d 1206, 1210 (9th Cir. 2010) ("The homestead exemptions available to the debtors…do not permit the exemption of the entire properties, but rather specific dollar amounts."). It is only when the available monetary exemption is greater than the value of the property that the owner's possessory and monetary interests are full protected. *Peirce*, 483 B. R. at 376. "Where the value of the property … exceeds the available exemption, the statute offers no protection to the possessory interest and protects the pecuniary interest only to the extent of the available monetary exemption." Id.

12.     The Debtor has scheduled the value of the Real Property at $813,000. Hingham, Institution for Savings ("Hingham"), the first mortgage holder on the Real Property, has filed an appraisal dated May of 2019, attached to the *Motion of Hingham Institution for Savings For Relief From the Automatic Stay to Exercise Rights with Respect to Real Property* [doc. No. 61] (the "Motion for Relief") suggesting that the Real Property has a value of $895,000. The Debtor testified at a Section 341 meeting that the Real Property could have or did have a value of $1.1 million based upon other sales. The Trustee's proposed real estate broker has confirmed that sales of condominium units in the Back Bay that approach the higher price range have occurred in the recent past. The Trustee's proposed broker has estimated that the Real Property

4

has a value of between $850,000 and $875,000, provided that certain repairs and cleaning are

undertaken. The amount of the asserted encumbrances against the Real Property, in the

aggregate, exceeds one million dollars and is increasing.

13.      Pursuant to 11 U.S.C. §522(c), the Debtor's homestead is not protected from

liability for debts for taxes and child support and is therefore are subject to the liens of both the

IRS and the DOR in addition to the mortgages and the statutory liens on the Real Property.

Further, the Debtor may not avoid the liens of the IRS or the DOR pursuant to the express terms

of 11 U.S.C. §522(f) to generate equity to which his homestead might attach.

14.      According to the Motion for Relief, the Debtor has not paid the first mortgage

holder since November of 2018 and is similarly not paying real estate taxes and condominium

fees. The first mortgage holder has granted the Debtor a forbearance on his mortgage payments

through August of 2020 due to the moratorium on foreclosures in Massachusetts as a result of

the COVID-19 pandemic. In the absence of a sale by the Trustee, the Court would likely grant

the Motion for Relief upon the termination of the moratorium, allowing Hingham to conduct a

foreclosure sale with respect to the Real Property.

15.      The holding of *DeGiacomo v. Traverse (In re Traverse)*, 753 F.3d 19 (1st Cir.

2014) has no applicability to this case. In the *Traverse* case, the Debtor's declared homestead

exceeded the value of her home, which was encumbered by a first mortgage that the Trustee had

successfully avoided. *Id.* The *Traverse* Court did not permit the Trustee to sell the Debtor's

home using his Section 363(b) power because the value of the home was less than the Debtor's

claimed exemption, therefore effectively removing the property from the estate. *Id at 24.* Such

is not the case here.

B.      <u>The Sale of the Real Property By Public Sale is in the Best Interest of the</u>

<u>Estate</u>

16.      Pursuant to Bankruptcy Rule 6004(f)(1), sales of property outside the ordinary

course of business may be held by private sale or public auction.

17.      The Trustee has concluded in his business judgment that the sale of the Real

Property by means of the Public Sale is the most efficient and effective means of administering

the Real Property.  The Debtor resides at the Real Property, and regular showings of the Real

Property will be challenging due to: (i) the combination of the Debtor's presence at the Real

Property and limitations on real property showings as a result of the COVID-19 pandemic; and

(ii) the suboptimal condition in which the Debtor maintains the Real Property. As such, a Public

Sale is the most advantageous means of marketing and selling the Real Property. As a result, a

sale by means of a Public Sale is in the best interests of the Estate and its creditors and will result

in the best available value for the Real Property.

18.      Concurrently herewith, the Trustee has filed an application to retain both

Sotheby's International Realty ("<u>Sotheby's</u>") and Paul E. Saperstein Co. ("<u>Saperstein</u>") to assist

in the marketing and public auction sale of the Real Property.  The Trustee proposes to

collectively pay Sotheby's and Saperstein a 3 1/2 % combined commission and to additionally

offer a 2% commission to cooperating brokers for a total commission not to exceed 5 ½%.

19.      The Trustee believes that a dual effort by Sotheby's and Saperstein will provide

the most effective means of marketing the Real Property because it will address the challenges of

showing the Real Property as set forth above and at the same time provide the widest exposure of

the Real Property to the market in order to yield the maximum value. Saperstein will provide the

expertise required for the Trustee to conduct a well-advertised Public Auction, and Sotheby's

will add its deep expertise in marketing and selling properties of the type and in the location of

the Real Property. The Real Property will be actively marketed by Sotheby's, which is very

familiar with the condominium market in Boston, including on the Multiple Listing Service.

20.     Saperstein will conduct the Public Sale at a physical location in the general

proximity of the Real Property, at a site to be determined.  Saperstein has established a marketing

plan for the Real Property, which includes print media, targeted mailings, including to parties

identified in its own database as potential bidders for the Real Property, and listings on various

internet sites.  Saperstein intends to advertise the Public Sale in newspapers, by first-class mail,

electronic mail, and on the Internet.

21.     In light of the Real Property's apparent lack of equity based upon asserted claims,

the Trustee's proposed compensation to Saperstein varies from and may exceed the

compensation set forth in MLBR 6004-1(d)(8)(e), which provides that an auctioneer will be

compensated from an auction of real estate in an amount not to exceed 10% of the first $50,000

realized in excess of the amount of encumbrances, plus two and one-half percent (2 ½%) of the

balance of the equity.  When considering, however, that the Trustee's sale of the Real Property in

conjunction with the other properties of the Estate is expected to collectively generate a

meaningful return to the Estate, the Trustee believes that the proposed compensation is

reasonable and will ultimately be below the limits provided for in the Local Rules.

22.     In the Trustee's judgment, the sale of the Real Property by the Public Sale will

enable him to obtain the highest and best offer for the Real Property, and approval of the Public

Sale according to the foregoing terms is therefore warranted.

**C.      Sale Of Real Property Free and Clear of Liens, Claims, Interests**

23.     Pursuant to Section 363 of the Bankruptcy Code, the Trustee requests authority to

sell the Estate's interest in the Real Property free and clear of all liens, claims, interests, and

encumbrances whatsoever, known and unknown, including without limitation liens, claims,

Emergency Motion Exhibits, Page 21 of 71

interests, and encumbrances held by any of the Debtor's creditors. Any and all liens, claims,

encumbrances, and interests shall attach to the proceeds subject to subsequent determination

regarding the validity, priority, and extent of such rights.

24.     Upon information and belief, the Real Property is encumbered approximately as

follows: [1]

|     |     |     |
| --- | --- | --- |
| a. | 32-34 Fairfield Street Condominium | $1,830.00 |
| b. | Hingham Institute for Savings | $550,000.00 |
| c. | Internal Revenue Service | $304,039.44[2] |
| d. | Massachusetts DOR | $9,847.79[3] |
| e. | Massachusetts DOR | $91,361.05[4] |
| f. | Ferris | $47,579.52[5] |

25.     As is set forth above, the Trustee has filed the Complaint seeking, among other

things, to require the IRS and the DOR to marshal against the Real Property, and to avoid the

mortgage of Ferris as preferential. The Trustee has sold and is in the process of selling properties

which are subject to the asserted liens of the IRS, Ferris, and in some cases, the DOR.  In

addition to the Marshaling Action, there are two additional adversary proceedings[6] currently

pending before this Court which impact the asserted lien of the IRS.

26.     Section 363(f) of the Bankruptcy Code provides that the Debtor may sell

property free and clear of liens, claims and encumbrances if one of the following conditions is

---

[1] Nothing in this motion shall be deemed to be an acknowledgment by the Trustee as to the amounts, validity, priority or enforceability of any asserted liens, claims, interests or encumbrances.
[2] Upon information and belief, the Internal Revenue Service has recorded two tax liens against the Real Property in the amounts of $244,579.62 and $322,598.61. Amount listed above is based upon the amount asserted by the Department of Treasury/Internal Revenue Service in its proof of claim number 3-3 filed on May 5, 2020
[3] Upon information and belief, the Massachusetts Department of Revenue has recorded three tax liens against the Real Property.  Amounts listed above are based upon the asserted secured amounts asserted by the Massachusetts Department of Revenue in proof of claim number 4-1 filed on April 28, 2020
[4] Face amount of recorded lien is $41,307.50. Proof of claim number 9-1 filed by Massachusetts Department of Revenue on May 11, 2020 asserts that secured claim totals $91,361.05.
[5] Amount listed is based upon the asserted secured claim of Ferris filed at claim number 13-1 on the Court's Claims Register on June 16, 2020.
[6] The Trustee has commenced an adversary proceeding [Adv. Proc. 20-01090] against three defendants, including the IRS, seeking to unwind the pre-petition foreclosure sale of property in Florida, which property is subject to the same lien that the IRS asserts against the Real Property. The Trustee has also removed [Adv.Proc. 20-01063], an action pending in Florida state court pertaining to the dispute over the surplus funds remaining following the disputed foreclosure asle.

Emergency Motion Exhibits, Page 22 of 71

satisfied:

    a.    Applicable non-bankruptcy law permits the sale of such
property free and clear of such interest;

    b.    the lienholder or claimholder consents;

    c.    such interest is a lien and the price at which such property
is to be sold is greater than the aggregate value of all liens
on such property;

    d.    such interest is in a bona fide dispute; or

    e.    the lienholder or claimholder could be compelled, in a legal
or equitable proceeding, to accept a money satisfaction of
such interest.

27.    A sale free and clear of a disputed interest in a debtor's assets "is expressly

permitted under 11 U.S.C. §364(f)(4)" where the asserted interest is in *bona fide* dispute. *In re*

*Genesys Research Inst., Inc.*, 2016 B.R. LEXIS 2376 at *65 (Bankr. D. Mass., June 24, 2016)

*citing Moldo v. Clark (In re Clark)*, 266 B.R. 163, 171 (B.A.P. 9th Cir. 2001); *In re Pierce*, 384

B.R. 477 (Bankr. S.D. Ohio 2008; *In re Octagon Roofing*, 123 B.R. 583 (Bankr. N.D. Ill. 1991)

(internal citations omitted). A "bona fide dispute" under Section 363(f)(4) means that "there is

an objective basis – either in law or fact – to cast doubt on the validity of" of such asserted

interest. *In re Revel AC, Inc.*, 802 F.3d 558, 573 (3d Cir. 2015).

28.    The liens of the IRS and the DOR and the mortgages of Ferris are in *bona fide*

dispute.

29.    As is set forth above, the Real Property is subject to multiple liens which are also

asserted against other properties of the Debtor that the Trustee has sold or is in the process of

selling. When considered in the aggregate, the Trustee' expects that the sale of the Estate's

properties, including the Real Property, will generate sufficient funds to provide a return to the

Estate.   If the Trustee does not sell the Real Property, however, Hingham's secured claim will

continue to increase due to the Debtor's non-payment of the mortgage, the condominium fees

Emergency Motion Exhibits, Page 23 of 71

and the real estate taxes, and the Court would likely permit Hingham to foreclose upon the Real

Property once the COVID-19 moratorium currently in place in Massachusetts has terminated. A

secured creditor foreclosure sale is likely to generate a reduced return for payment of junior

lienholders, which will negatively impact the Estate. As such, it is in the best interest of all

parties to reduce the Real Property to cash.

30.     After payment to of the costs of sale, including payment of commissions to real

estate brokers and auctioneers, ordinary and usual closing costs, condominium association

charges, municipal liens, and the allowed claim of the holder of first mortgage, the Trustee

proposes to hold the balance of the proceeds in escrow pending further Court order.

31.     Based upon the foregoing, the Trustee requests, pursuant to Section 363(f) of the

Bankruptcy Code, that the Real Property be sold free and clear of any and all liens, claims, and

interests, with such liens, claims, and interests attaching to the net proceeds of the sale with the

same validity, priority and enforceability as existed prior to the sale.  Nothing herein shall be

deemed to be an acknowledgment by the Trustee as to the validity, priority or enforceability of

any asserted liens, claims, or interests.

### IV.    Sale Procedures

32.     The Trustee has conferred with Sotheby's and Saperstein and believes that

holding the Public Auction Sale in the fall is the optimal time for achieving the highest price for

the Real Property.

33.     As such, the Public Sale will be scheduled to occur following Court approval of

this motion on the terms and conditions set forth in this Sale Motion and in the proposed *Notice*

*of Intended Public Auction Sale of Real Property, Deadline for Objections, and Final Hearing*

*on Motion by Chapter 7 Trustee for Entry of Order Authorizing the Sale of Real Property by*

*Public Auction Sale, Free and Clear of Liens, Claims, Interests and Encumbrances (34 Fairfield*

Emergency Motion Exhibits, Page 24 of 71

*Street, Apt. 2, Boston, Massachusetts)* (the "<u>Notice</u>") attached hereto as <u>Exhibit A</u>.

34.    The Notice provides, among other things, that the Public Sale will be conducted in accordance with the following terms and conditions: [7]

- The Real Property shall be transferred on an "as is, where is, and how is" basis, without any representation or warranty of any kind by the Trustee.

- Pursuant to section 363(f) of the Bankruptcy Code, the Real Property shall be sold free and clear of any liens, claims, encumbrances and interests, with such liens, claims, encumbrances and interests, if any, attaching to the proceeds of such sale to the same extent, validity and priority as they existed on the date of the Public Sale.

- The Trustee reserves the right to withdraw the Real Property from the Public Sale at or prior to the Public Sale.

- The Trustee reserves the right prior to the Public Sale to enter into an agreement for the disposition of the Real Property and to sell the Real Property by private sale subject to Court approval.

- The Trustee reserves the right to reject, in his sole discretion, any and all bids for the Real Property.

- Terms for the closing upon the Real Property by the successful bidder shall be announced at the auction.  The successful bidder(s) must comply with the announced terms or shall forfeit the deposit and the right to purchase the Real Property.

- To the extent that the Trustee does not consummate a sale to highest bidder for the Real Property for any reason, the Trustee may sell the Real Property to the second highest bidder(s) for the Real Property in his discretion.

- The Trustee, in consultation with the Auctioneer, may, at or before the Public Sale, may impose such other and additional terms and conditions as he determines to be in the best interests of the Trustee, the estate, its creditors and other parties in interest.

- Additional terms may be announced by the Auctioneer at the time of the Public Sale.

- The Court may take evidence at any hearing on approval of the proposed Public Sale to resolve issues of fact.

---

[7] The following discussion represents a summary of the Notice.  In the event of a discrepancy between this summary and the terms of the Notice, the terms of the Notice shall control.

11

- The Court may modify the method of sale set forth herein at or prior to the hearing on the proposed Public Sale.

35.    Should the high bidder for the Real Property fail to close on the sale, the Trustee seeks authority to sell such Real Property to the next highest bidder without further Court approval.

36.    The Trustee requests that the deposit submitted by the highest bidder be forfeited to the Estate if the highest bidder fails to complete the sale by the date ordered by the Court.

## V.    Good Faith Protections under Section 363(m)

37.    Because the Public Sale will effectuate a transfer of the Real Property following a public and transparent sale process, any purchaser of the Real Property is entitled to the protections of Section 363(m) of the Bankruptcy Code which provides, in pertinent part:

> The reversal or modification on appeal of an authorization under subsection (b)…of this section of a sale…of property does not affect the validity of a sale …under such authorization to an entity that purchased…such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale…were stayed pending appeal.

11 U.S.C. § 363(m).

38.    Courts have defined a "good faith purchaser" as "one who buys property in good faith and for value, without knowledge of adverse claims." *In re Mark Bell Furniture Warehouse, Inc.*, 992 F.2d 7, 8 (1st Cir. 1993).  "Good faith" is a lack of "fraud, collusion…or an attempt to take grossly unfair advantage of other bidders." *Id.* (*citing In re Andy Frain Servs., Inc.*, 798 F.2d 1113, 1125 (7th Cir. 1986).  Due to the absence of a bright line test for good faith, the determination is based on the facts of each case, concentrating on the "integrity of [an actor's] conduct during the sale proceedings." *In re Tri-Cran, Inc.*, 98 B.R. 609, 618 (Bankr. D. Mass. 1989) (*quoting Rock Indus. Machinery Corp.*, 572 F.2d at 1198 (7th Cir. 1978)).

39.    The proposed Public Sale will be subject to a formal transparent marketing and sale process during which the Real Property will be made available to any prospective purchaser

Emergency Motion Exhibits, Page 26 of 71

and widely advertised to attract the most bidders possible prior to a public auction sale.  All

parties with an interest in the Real Property, and as required by Bankruptcy Rule 2002, will

receive notice of the Sale and will be provided an opportunity to be heard prior to the proposed

sale.  The Trustee submits that such notice is adequate and satisfies the requisite notice

provisions required under section 363(b) of the Bankruptcy Code.  Under the circumstances, the

purchaser of the Real Property should be afforded the benefits and protections that Section

363(m) of the Bankruptcy Code provides.

<div align="center"><b>VI.    Waiver of Provisions of Fed. R. Bankr. P. 6004</b></div>

40.    In order to provide for a closing on the sale of the Real Property as soon as

practicable and to avoid the continued accrual of costs associated with the Real Property,

including amounts owed on the first mortgage, the Trustee requests that the Court waive the

automatic stay provisions of Fed. R. Bankr. P. 6004(h) with respect to the Private Sale.

<div align="center"><b>VII.    Notice</b></div>

41.    The Trustee has filed a form of proposed Notice providing for the terms of sale,

sale procedures, and other relevant information. The Trustee believes that the Notice provides

necessary information respecting the sale and the means for obtaining additional information.

42.    Additional information respecting the terms of the sale is disclosed in

the proposed Notice.

43.    Concurrently with the Sale Motion, the Trustee has filed the Motion

by Chapter 7 Trustee for Entry of Order Limiting Notice (the "Motion to Limit").

44.    As is set forth in the Motion to Limit, a copy of the Notice will be

served upon on all creditors, except as provided in the Motion to Limit, all parties

asserting an interest in the Real Property, all parties having filed notices of

appearances, and all governmental authorities.

<div align="center">13</div>

## VIII.  **Distribution of Sale Proceeds**

45.    By this motion, the Trustee requests authority to pay all costs of sale including allowed secured claims, taxes, brokers' commissions, condominium association charges and customary closing costs and expenses.

**WHEREFORE,** the Trustee respectfully requests that this Court enter an Order:

(A)    Pursuant to 11 U.S.C. § 363, approving this Sale Motion and authorizing the Trustee to sell the Estate's interest in the Real Property by Public Sale subject to the terms and conditions set forth herein, free and clear of liens, claims, encumbrances and interest, with such liens, claims, encumbrances, and interests to attach to the proceeds of the sale to the extent of their validity, perfection and priority;

(B)    Approving the form of the proposed Notice;

(C)    Approving the sale of the Real Property to the next highest bidder, if the sale is not completed by the highest bidder;

(D)    Determining the any purchaser of the Real Property shall be a good faith purchaser(s) for value pursuant to Section 363(m) of the Bankruptcy Code;

(E)    Authorizing the Trustee to pay ordinary and usual closing costs and allowed secured claims associated with the sale of the Real Property as set forth herein, with such amounts to be paid from the net proceeds of the sale;

(F)    Waiving the automatic stay provisions of Fed. R. Bankr. P. 6004(h) with respect to the Public Sale; and

14

(G)     Granting such other and further relief as this Court deems just and proper.

Respectfully Submitted,

HAROLD B. MURPHY,
Chapter 7 Trustee
By his counsel,

 /s/ Kathleen R. *Cruickshank*
Harold B. Murphy (BBO #326610)
Kathleen R. Cruickshank (BBO #550675)
MURPHY & KING, Professional Corporation
One Beacon Street
Boston, Massachusetts 02108-3107
Tel: (617) 423-0400
Dated: July 27, 2020                   Email: KCruickshank@murphyking.com

15

# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: | ) |
| | ) |
| | ) Chapter 7 |
| BARRY WISNER CHAPIN | ) |
| | ) Case No. 20-10324 JEB |
| | ) |
| Debtor. | ) |
| | ) |

NOTICE OF INTENDED PUBLIC AUCTION SALE OF REAL PROPERTY,
DEADLINE FOR OBJECTIONS, AND FINAL HEARING ON MOTION BY CHAPTER
7 TRUSTEE FOR ENTRY OF ORDER AUTHORIZING THE SALE OF REAL
PROPERTY BY PUBLIC AUCTION SALE, FREE AND CLEAR OF LIENS, CLAIMS,
INTERESTS, AND ENCUMBRANCES
*(34 Fairfield Street, Apt. 2, Boston, Massachusetts)*

**PLEASE TAKE NOTICE** that pursuant to 11 U.S.C. § 363, Fed. R. Bankr. P.
2002(a)(2), 6004, and in accordance with the *Motion By Chapter 7 Trustee For Entry of Order
Authorizing Sale of Real Property By Public Auction Sale Free And Clear Of Liens, Claims,
Interests And Encumbrances* ("Sale Motion"), Harold B. Murphy as he is the Chapter 7 Trustee
(the "Trustee") of the bankruptcy estate (the "Estate") of Barry Wisner Chapin (the "Debtor" or
"Chapin"), intends to sell by public auction sale (the "Public Sale") all of the Estate's right, title
and interest in certain real property located at 34 Fairfield Street, Apartment 2, Boston,
Massachusetts,   The terms of the sale are more particularly described below, and are also
disclosed in the Sale Motion. A copy of the Sale Motion is available from counsel to the Trustee
upon request.

## I.      THE REAL PROPERTY

1.      The Real Property consists of a 764 square foot, two-bedroom, one-bathroom
condominium unit located in the 32-34 Fairfield Street Condominiums and identified as 134
Fairfield Street, Apartment 2, Boston, Massachusetts.  The Real Property is located in the Back
Bay area of Boston and is within walking distance of public transportation, colleges, shopping
centers, parks and museums.

## II.      THE REAL PROPERTY SHALL BE SOLD FREE AND CLEAR OF
## LIENS, CLAIMS AND ENCUMBRANCES

2.      Pursuant to 11 U.S.C. § 363(f) and the Sale Motion, the Real Property is to be
sold free and clear of liens, claims, interests and encumbrances whatsoever, known or unknown,
including without limitation those noted in the Sale Motion, except as to restrictions, easements,
and limitations. The Real Property is to be sold in "as is" and "where is" condition. Further, the

Trustee is not making any representations or warranties whatsoever, either express or implied, with respect to the Real Property.

      3.     All valid liens, claims or encumbrances shall attach to the proceeds of the sale of the Real Property. The validity and enforceability of any contested lien shall be determined by the Bankruptcy Court after due notice and hearing.

### III.   AUCTION DATE, DEADLINE FOR OBJECTIONS, AND HEARING ON SALE MOTION

      **4.     The Public Sale will be held in the fall of 2020 at a place and time to be determined, near the location of the Real Property.**

      **5.     The Auctioneer will follow COVID-19 safety protocols at the Public Sale, including (i) conducting the Public Sale outdoors; (ii) asking participants not to attend if they are experiencing symptoms of illness; (iii) requiring all bidders and attendees to bring and wear masks and adhere to all social distancing standards of six feet or more; and (iv) requiring all attendees except the winning bidder and auction staff to depart immediately following the conclusion of the Public Sale.**

      **6.     A HEARING ON THE SALE MOTION AND ANY OBJECTIONS THERETO ARE SCHEDULED TO TAKE PLACE BY TELEPHONE ON _____ ("SALE HEARING") BEFORE THE HONORABLE JANET E. BOSTWICK, UNITED STATES BANKRUPTCY JUDGE, United States Bankruptcy Court, John W. McCormack Post Office & Court House, 5 Post Office Square, Boston, Massachusetts 02109 ("COURT"). ANY PARTY WHO HAS FILED AN OBJECTION TO THE SALE MOTION IS EXPECTED TO BE PRESENT AT THE SALE HEARING, FAILING WHICH THE OBJECTION MAY BE OVERRULED. IF NO OBJECTION TO THE SALE MOTION IS TIMELY FILED, THE COURT, IN ITS DISCRETION, MAY CANCEL THE SALE HEARING AND APPROVE THE SALE MOTION.**

      7.     Any objection to the Sale Motion must be in writing and filed with the Clerk, United States Bankruptcy Court, John W. McCormack Post Office & Court House, 5 Post Office Square, Boston, Massachusetts 02109, on or before _____ ("Objection Deadline"). A copy of any objection must be also served upon undersigned counsel to the Trustee so as to be received on or before the Objection Deadline. Any objection must state with particularity the grounds for the objection and the interest that the objecting party has in these proceedings, and shall be governed by Fed. R. Bankr. P. 9014.

### IV.   TERMS OF THE SALE

      8.     The Public Sale will be conducted pursuant to the following terms:

- The Real Property shall be transferred on an "as is, where is, and how is" basis, without any representation or warranty of any kind by the Trustee.

- Pursuant to section 363(f) of the Bankruptcy Code, the Real Property shall be sold free and clear of any liens, claims, encumbrances and interests, with such liens, claims, encumbrances and interests, if any, attaching to the proceeds of such sale to the same extent, validity and priority as they existed on the date of the Public Sale.

- The Trustee reserves the right to withdraw the Real Property from the Public Sale at or prior to the Public Sale.

- The Trustee reserves the right prior to the Public Sale to enter into an agreement for the disposition of the Real Property and to sell the Real Property by private sale subject to Court approval.

- The Trustee reserves the right to reject, in his sole discretion, any and all bids for all the Real Property.

- Terms for the closing on the purchase and sale of the Real Property by the successful bidder shall be announced at the auction.  The successful bidder(s) must comply with the announced terms or shall forfeit the deposit and the right to purchase the Real Property.

- To the extent that the Trustee does not consummate a sale to highest bidder for the Real Property for any reason, the Trustee may sell the Real Property to the second highest bidder(s) for the Real Property in his discretion.

- The Trustee, in consultation with the Auctioneer, may, at or before the Public Sale, may impose such other and additional terms and conditions as he determines to be in the best interests of the Trustee, the estate, its creditors and other parties in interest.

- Additional terms may be announced by the Auctioneer at the time of the Public Sale.

- The Court may take evidence at any hearing on approval of the proposed Public Sale to resolve issues of fact.

- The Court may modify the method of sale set forth herein at or prior to the hearing on the proposed Public Sale.

9.    You may obtain additional information regarding the Public Sale from the

Auctioneer at www.pesco.com.

10.    You may receive a complete copy of the Sale Motion by contacting the Trustee's counsel at the address set forth below.

Respectfully Submitted,

HAROLD B. MURPHY,
Chapter 7 Trustee
By his counsel,

 /s/ Kathleen R. *Cruickshank*
Harold B. Murphy (BBO #326610)
Kathleen R. Cruickshank (BBO #550675)
MURPHY & KING, Professional Corporation
One Beacon Street
Boston, Massachusetts  02108-3107
Tel: (617) 423-0400
Email: KCruickshank@murphyking.com

Dated: _____, 2020
782618

UNITED STATES BANKRUPTCY COURT
EASTERN DIVISION, DISTRICT OF MASSACHUSETTS

| In re: | |
|---|---|
| Barry Wisner Chapin | Chapter 7 |
| | Case No.  20-10324-JEB |
| Debtor | |

## OBJECTION TO TRUSTEE'S MOTION TO SELL THE DEBTOR'S HOMESTEAD

NOW COMES Barry Wisner Chapin, by his attorney, and objects to the motion of the chapter 7 trustee (document 223) for approval of a sale of the debtor's homestead at 34 Fairfield Street, Apt. 2; Boston, MA.  As discussed below, Chapin disagrees with the trustee's argument concerning In re Traverse, 753 F. 3d 19 (1st Cir. 2014).  As to the numbered paragraphs, he states:

- Admitted.
- Admitted.
- Denied in part.  An admittedly cursory review of the records of the Suffolk Registry of Deeds relating to 34 Fairfield Street does not reflect the filing of a Notice of Lien as required by Internal Revenue Regulation 301.6323(f)-1, and no recorded liens are attached to the IRS proof of claim.  The only documents attached are notices filed in the District Court, which do not appear to be sufficient.
- Admitted.   Chapin has filed an answer with affirmative defenses and counterclaims.
- Admitted.
- This allegation is a statement of the relief requested, and requires no answer.
- This allegation is a statement related to the relief requested, and requires no answer.
- This allegation is legal argument to which no response is required.
- This allegation is a statement of the relief requested, and requires no answer.
- While Chapin acknowledges that the trustee's business judgment is entitled to deference, he disagrees with the legal conclusions stated in this allegation, for the reasons given below.
- This allegation is a statement of the relief requested, and requires no answer, except that in Massachusetts, a homestead is an estate in land which requires occupancy and possession, or at least an intent to occupy and possess the property.  *See* In re Webber, 278 BR 294, 297 (Bankr. D. Mass. 2002).  The trustee's citation to In re Pierce, 483 B.R. 368 (Bankr.D. Mass. 2012), is inapt, at best, because the debtors in that case had only a life estate, not a fee simple estate as Chapin does.  The statement that the homestead "does not attach to any economic interest in the Real Property" may be true in a case where the debtor's interest is only a life estate, but that is not the case here, so Chapin's homestead does, in fact and law, attach to a maximum of $500,000 above any nonavoidable, perfected liens.
- Admitted solely for present purposes.  It appears that there is no equity in the property, as the trustee admitted in paragraph 10.
- Admitted solely as a legal proposition.

- As this is mostly speculation, no response is required.
- Denied for the reasons stated in the argument, below
- This allegation is legal argument to which no response is required.
- While the trustee's business judgment is entitled to deference, he cannot overcome the legal obstacles to exercising that judgment, for the reasons stated in the argument below.
- Duly noted.
- While the trustee's business judgment is entitled to deference, he cannot overcome the legal obstacles to exercising that judgment, for the reasons stated in the argument below.
- Chapin lacks knowledge or information sufficient to respond to this allegation.
- The trustee's concession as to the "apparent lack of equity" is fatal to his intention to sell the property.
- While the trustee's business judgment is entitled to deference, he cannot overcome the legal obstacles to exercising that judgment, for the reasons stated in the argument below.
- This allegation is a statement of the relief requested, and no response is required.
- Since the source of the "information and belief" is not stated, Chapin lacks knowledge or information sufficient to respond to this allegation.
- Admitted.  Chapin has filed an answer with affirmative defenses and counterclaims.
- Assuming that the trustee means "trustee" rather than "debtor", admitted as a legal proposition.
- Admitted as a legal proposition.
- Admitted.
- Aside from the speculation, denied that a sale is in Chapin's best interests.
- Given the trustee's admission that there is no equity in the property, it is highly unlikely that there will be any "proceeds" to hold in escrow.
- The request should be denied for all of the reasons stated herein.
- Duly noted.
- For all the reasons stated herein, the motion should be denied.
- Admitted for present purposes only.
- This allegation is a statement of the relief requested, and no response is required.
- This allegation is a statement of the relief requested, and no response is required.
- Admitted as a legal proposition.
- Admitted as a legal proposition.
- Admitted as a legal proposition.
- This relief should be denied as Chapin will appeal any order granting this motion.
- Admitted as a legal proposition.
- Admitted as a legal proposition.
- Admitted as a legal proposition.
- Since the motion should be denied, this request seems to be moot.

<u>ARGUMENT</u>

Further responding to the motion, Chapin submits as follows.
Contrary to the trustee's assertion, <u>DeGiacomo v. Traverse (In re Traverse)</u>, 753 F.3d 19

(1st Cir. 2014), *cert. denied*, 135 S.Ct. 459 (2014), is precisely on point and is fatal to the trustee's motion.  Initially, however, it is necessary to point out a legal error in the trustee's argument.

- According to the trustee, the <u>Traverse</u> court said that the trustee in that case could not sell the debtor's home "because the value of the home was less than the Debtor's claimed exemption, therefore effectively removing the property from the estate."  That is not what the court said and is a misstatement of law.  What the court did say was:

    > Because a debtor's exempted property interests are effectively removed from the estate, however, *see Owen v. Owen,* 500 U.S. 305, 308, 111 S.Ct. 1833, 114 L.Ed.2d 350 (1991), § 363 does not empower the trustee to sell exempted interests.

    <u>Traverse</u> at 24 (citing other cases, as well).  It did not say that "the property" was removed from the estate, only that the debtor's *interest* in the property was removed.  There were, of course, other interests in the property which never came into the estate, specifically the mortgages.  The sum total of those interests was greater than the fair market value of the property, so there was no equity for the bankruptcy estate.  Furthermore, the court quite clearly said that if there is no equity in the property above unavoidable liens and a debtor's exemption, the trustee should not be permitted to sell the property only to pay secured claims.
- Factually, the property in <u>Traverse</u> was also encumbered by an *unavoidable*, properly perfected second mortgage.  Thus the total owed on the unavoided mortgage plus the debtor's homestead exceeded the value of the property, which appears to be the case here, although the mortgages do not appear to be avoidable.
- Given that the trustee does not appear to have obtained any determination as to the validity of the various liens, although an adversary proceeding for that purpose is pending, and his admission that there does not appear to be any equity in the property for the benefit of the estate, the present motion should be denied until a determination is made as to whether the estate would benefit from the sale.

WHEREFORE Chapin requests that the motion be denied as stated herein.

August 1, 2020

                                         Respectfully submitted,
                                         Barry Wisner Chapin,
                                         By debtor's attorney,

                                         <u>/s/    David G. Baker</u>
                                         David G. Baker, Esq.
                                         236 Huntington Avenue, Ste. 317
                                         Boston, MA  02115
                                         617-340-3680
                                         BBO# 634889

<u>Certificate of Service</u>

The undersigned states upon information and belief that the within objection was served upon the entities named below by the court's CM/ECF system.

/s/     David G. Baker
David G. Baker

- Christopher M. Condon on behalf of Trustee Harold B. Murphy - ccondon@murphyking.com, imccormack@murphyking.com; ecf-06e49f159ba0@ecf.pacerpro.com
- Kathleen R. Cruickshank on behalf of Harold B. Murphy, Chapter 7 Trustee - kcruickshank@murphyking.com,  bankruptcy@murphyking.com;asavoia@murphykin g.com;ecf-f3829d9f3bd3@ecf.pacerpro.com
- Elizabeth Dailey on behalf of Creditor Freedom Mortgage Corporation - bd@dgandl.com, rjl@dgandl.com;mbd@dgandl.com;bs@dgandl.com
- John Fitzgerald - USTPRegion01.BO.ECF@USDOJ.GOV
- Kevin Gaughen, Jr. on behalf of Creditor Hingham Institution for Savings  - kevingaughenjr@gaughenlane.com
- Dean Lennon on behalf of Creditor Carlton Gardens Condominium Trust - dlennon@meeb.com
- Reneau J. Longoria on behalf of Creditor Freedom Mortgage Corporation - rjl@dgandl.com, bd@dgandl.com;mbd@dgandl.com;bs@dgandl.com
- Richard T. Mulligan on behalf of Creditor Freedom Mortgage Corporation - mabk@harmonlaw.com, rmulligan@ecf.courtdrive.com
- Harold B. Murphy, Chapter 7 Trustee - mxc@hanify.com, ma33@ecfcbis.com; dkonusevska@murphyking.com
- Richard B. Reiling on behalf of Creditor Linda Reyes-Flores - Reilinglaw@aol.com, richard@bottonereiling.com
- Ellen A. Shapiro on behalf of Creditor Board of Trustees of 32-34 Fairfield Street Condominium Trust - shapiro@goshlaw.com

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS
## EASTERN DIVISION

|  |  |  |
|---|---|---|
| **In re:** | ) | |
| | ) | **Chapter 7** |
| **BARRY WISNER CHAPIN** | ) | |
| | ) | **Case No. 20-10324 JEB** |
| **Debtor.** | ) | |
| | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION BY CHAPTER 7 TRUSTEE AUTHORIZING SALE OF REAL PROPERTY

Harold B. Murphy, as he is the Chapter 7 Trustee (the "Trustee") of the bankruptcy estate (the "Estate") of Barry Wisner Chapin (the "Debtor"), submits this memorandum in support of his motion to sell the Estate's interest in the real property located at 34 Fairfield Street, Apartment 2, Boston, Massachusetts (the "Fairfield Property") [Doc. No. 223] (the "Sale Motion").

The Court need not determine the Trustee's Marshaling Action[1] prior to authorizing the sale of the Fairfield Property because under the circumstances of this case, whether marshaling is permitted or not, no equity exists to which the Debtor's asserted homestead exemption can attach. Accordingly, the Sale Motion should be allowed because there will be no adverse impact on the Debtor's valueless homestead.

If the Sale Motion is not allowed, the Fairfield Property will be sold at a distressed price through foreclosure by Hingham Institute for Savings ("Hingham"),[2] leading to a substantial loss

---

[1] On April 10, 2020, the Trustee commenced an adversary proceeding [Adv. Proc. No. 20-01050] (the "Marshalling Action") seeking, among other things, to compel the IRS and the Massachusetts DOR to marshal by enforcing their respective liens against the Fairfield Property, so as to maximize the value of the Estate's interest in the Debtor's remaining properties.

[2] Hingham has not received a payment from the Debtor in approximately two years, and previously filed a motion seeking relief from the automatic stay to foreclose upon the Fairfield Property ("Motion for Relief"). The Motion for Relief was denied by the Court without prejudice based upon the Trustee's stated intent to sell the Fairfield Property. The Trustee has been informed that Hingham intends to renew its Motion for Relief if the Sale Motion is denied.

of value and delay in distributing any surplus proceeds to junior creditors from the foreclosure sale. In contrast, sale of the property by the Trustee will maximize the recovery available to satisfy liens against the Fairfield Property and the Debtor's other properties. Given the support of creditors for the sale, including the Internal Revenue Service, Hingham Institute for Savings, and Ferris Development Group, LLC, approval of the Sale Motion is warranted.

I.    <u>Regardless of whether marshalling is allowed, the Debtor's asserted homestead exemption has no value.</u>

As of February 4, 2020 (the "<u>Petition Date</u>"), the Debtor owned three properties in Massachusetts: (a) the Fairfield Property; (b) 147 Milk Street, Unit 15, Westborough, Massachusetts ("<u>Unit 15</u>"); and (c) 155 Milk Street, Unit 3, Westborough, Massachusetts ("<u>Unit 3</u>"). The Debtor also owned one property in Florida at 228 NE 1st Street, #406, Delray Beach, Florida (the "<u>Astor Condo</u>"); and had a claim with respect to a pre-petition foreclosure by a condominium association of another property in Florida located at 185 Northeast Fourth Avenue, No. 210, Delray Beach, Florida (the "<u>Ocean City Condo</u>").[3]

The Trustee sold the Astor Condo and Unit 15, generating net proceeds, after satisfaction of the first mortgages, real estate taxes, and closing costs, of $291,586.20 and $44,858.14, respectively. The Trustee's sale of Unit 3, scheduled for closing on September 15, 2020, is expected to generate net proceeds, after satisfaction of the first mortgage, real estate taxes, and closing costs, of approximately $38,000. These sale proceeds total approximately $375,000 (the "<u>Sale Proceeds</u>"). In connection with the sale of the three properties, the Trustee is entitled to a commission of approximately $52,000 and counsel fees and expenses of not less than $55,000,

---

[3] The Trustee has commenced a separate adversary proceeding [Adv. Proc. 20-01063] contesting, among other things, the validity of the foreclosure sale.

2

which costs are entitled to be paid from the Sale Proceeds in accordance with 11 U.S.C. §§

506(c) and 726(b).

With respect to the Fairfield Property, because there are no funds in the Estate available

to repair and clean the unit, the Trustee's proposed real estate broker estimates that the property

in its current condition is likely to sell for no more than $800,000.

The Fairfield Property is subject to the following mortgages and liens that are senior to

the Debtor's claim of homestead:

- lien of 32-34 Fairfield Street Condominium Association for unpaid condominium fees in the asserted amount of $5,303 as of the Petition Date ("Fairfield Condo Fees");

- mortgage in favor of Hingham in the asserted amount of $575,000 as of the Petition Date ("Hingham Mortgage");

- lien of the Massachusetts Department of Revenue tax division for unpaid income taxes for 2015 in the asserted amount of $20,722 as of the Petition Date ("DOR Tax – Income");

- lien of the Internal Revenue Service for the Debtor's unpaid income taxes in the asserted amount of $304,039.44 as of the Petition Date ("IRS Tax Lien");[4]

- lien of the Massachusetts Department of Revenue tax division for the Debtor's wage and labor law violations as the responsible person of Chapin Intellectual Property Law LLC in the asserted amount of $10,493 as of the Petition Date ("DOR Tax – Violations");

- lien of the Massachusetts Department of Revenue Child Support Enforcement Division for overdue child support in the asserted amount of $91,381.05 as of the Petition Date ("DOR Child Support");

- mortgage in favor of Ferris Development Group, LLC in the asserted amount of $94,630.58 as of the Petition Date ("Ferris Mortgage").[5]

---

[4] Contrary to the assertion of the Debtor, the liens of the IRS are recorded with the Suffolk County Registry of Deeds at Book 56879 Page 71 and Book 57251 Page 5.

[5] Among other things, the Trustee has sought in the Marshaling Action to avoid the Ferris Mortgage, which was recorded 40 days prior to the Petition Date, and to preserve it for the benefit of the Estate, pursuant to 11 U.S.C. §§ 547, 550 and 551.

Emergency Motion Exhibits, Page 41 of 71

Regardless of whether the Trustee is ultimately allowed to compel marshalling, no equity will remain in the Fairfield Property on which the Debtor's asserted homestead exemption can attach, because in either scenario, the total lien amounts against the property would exceed the value of the property.

If marshaling is not allowed, there will be no equity for the claim of Debtor's homestead. After payment of the Trustee's and counsel's fees and expenses of $107,000 from the Sale Proceeds, the remaining $268,000 would be used to pay a portion of the IRS Tax Lien, leaving the IRS with a lien against the Fairfield Property of $36,039. The Fairfield Property would be subject to the following unavoidable liens that exceed the value of the property:

|     |                     |          |
| --- | ------------------- | -------- |
| a)  | Fairfield Condo Fees| $5,303   |
| b)  | Hingham Mortgage    | $575,000 |
| c)  | DOR Tax – Income    | $20,722  |
| d)  | Remaining IRS Tax Lien | $36,039 |
| e)  | DOR Tax – Violations | $10,493 |
| f)  | DOR Child Support   | $91,361  |
| g)  | Ferris Mortgage     | $94,630  |

**TOTAL**                          **$833,548**

If marshaling is allowed, there will still be no equity for the Debtor's claim of homestead. Under this scenario, the Fairfield Property would be subject, among others, to the following unavoidable liens that exceed the value of the property:

|     |                     |          |
| --- | ------------------- | -------- |
| a)  | Fairfield Condo Fees| $5,303   |
| b)  | Hingham Mortgage    | $575,000 |
| c)  | IRS Tax Lien        | $304,039 |

**TOTAL**                          **$884,342**

A debtor may exempt property only to the extent that the debtor has an interest in the property. *In re Hannon*, 514 B.R. 69, 76 (D. Mass. 2014); *Drummond v. Urban (In re Urban)*, 375 B.R. 882, 885, n.7 (B.A.P. 9th Cir. 2007) ("the amount of exemption available to a debtor is

4

the lesser of either the equity in the property or the minimum amount of the applicable

exemption.").  Here, there is no equity in the property after consideration of navoidable senior

liens under both the marshaling and non-marshaling scenarios.[6] In either case, the Debtor's

asserted homestead exemption as to the Fairfield Property has no value.

II.    No determination as to marshalling is necessary prior to allowance of the Sale
       Motion.

The marshalling doctrine is an equitable remedy based upon "the principle that a creditor

having two funds to satisfy his debt, may not by his application of them to his demand, defeat

another creditor, who may resort to only one of the funds." *Meyer v. United States*, 375 U.S. 233,

236 (1963). Bankruptcy courts have discretionary power to order marshalling in a bankruptcy

case. *Houghton v. United States (In re Szwyd)*, 394 B.R. 230, 238 (Bankr. D. Mass. 2008)

("*Szywd 1*"), aff'd, *United States v. Houghton (In re Szwyd)*, 408 B.R. 547 (D. Mass. 2009)

("*Szywd 2*").

The Trustee, as a hypothetical lien creditor, has standing pursuant to 11 U.S.C. § 544(a)

to request that a senior secured creditor be required to marshal its collateral. *Szywd 2*, 408 B.R. at

550. Marshalling may not be invoked by a debtor. *See e.g.*, *Penn Sec. Bank & Trust Co. v. Royce

(In re Royce)*, 32 B.R. 63, 64-65 (Bankr. M.D. Penn. 1983) ("it is apparent that marshalling is

applied to protect the rights of competing creditors, rather than the interests of the debtor."); *see

also Sowell v. Federal Reserve Bank*, 268 U.S. 449, 457 (1925) (debtor could not require creditor

to look to other property first to satisfy his debt contrary to the terms of valid contract); *In re

Shepler*, No. 11-33248PM, 2014 Bankr. LEXIS 31, *7 (Bankr. N.D. Ohio) (debtor lacked

standing to invoke marshalling to compel creditor to look to specific collateral to satisfy its lien);

---

[6] Under Massachusetts law, the homestead exemption does not exempt "a sale for federal, state and local taxes,
assessments, claims and liens," nor does it exempt a sale for an order requiring child support payments. M.G.L.c.
188 § 3(b); *United States v. Houghton (In re Szwyd)*, 408 B.R. 547, 550-551 (D. Mass. 2009).

5

*In re Vermont Toy Works, Inc.*, 135 B.R. 762, 768 (D. Vt. 1991) (only secured creditors have the authority to invoke the doctrine of marshaling).

The Trustee may assert marshaling against governmental authorities pursuant to 11 U.S.C. § 106. *Szwyd 2*, 408 B.R. at 552; *In re Bame*, 279 B.R. 833, 837-38 (8th Cir. B.A.P. 2002); *Maine Associates v. United States*, 53 B.R. 489 (D. Me. 1985). Under the circumstances, marshaling is appropriate against the IRS and Massachusetts DOR. *See* Complaint [Doc. 54]; *Szwyd 1*, 408 B.R. at 550 (marshaling may be utilized where there is "(1) a common debtor; (2) two separate funds, one of which is a common fund available to both creditors and one of which is available only to the senior creditor; and (3) no detriment or prejudice to the senior creditor if he is required to pursue the fund to which he alone can look.").

Even if the Debtor's claim of homestead should be considered, see *Meyer*, 375 U.S. at 236, the Debtor's homestead has no value after the payment of the unavoidable senior liens, regardless of whether marshaling is invoked. Accordingly, the Court need not determine the Trustee's Marshaling Action prior to authorizing the Sale Motion.

III.     Allowance of the Sale Motion is preferable to the alternative of foreclosure.

Absent allowance of the Sale Motion, there will be no basis to oppose Hingham's Motion for Relief, allowance of which will result in a foreclosure sale of the Fairfield Property at a distressed price. If there are any surplus proceeds after the payment of Hingham's claim following foreclosure, the foreclosure will require the filing of an interpleader action in state court, resulting in substantial delays and additional costs that would further diminish any proceeds that would be available to pay junior lienholders. In contrast, allowance of the Sale Motion will permit the Trustee to promptly sell the Fairfield Property and distribute the proceeds

6

to creditors in order of their priority, thereby reducing the claims against the Debtor's other

properties.

## <u>CONCLUSION</u>

For the reasons set forth herein, the Court should allow the Sale Motion and overrule the

Debtor's objection.

Respectfully submitted,

HAROLD B. MURPHY,
Chapter 7 Trustee of Barry Chapin.

By his attorneys,

<u>/s/Kathleen R. Cruickshank</u>
Harold B. Murphy (BBO#326610)
Kathleen R. Cruickshank (BBO #550675)
Shawn Lu (BBO #679755)
Murphy & King Professional Corporation
One Beacon Street, 21st Floor
Boston, Massachusetts  02108-3107
Telephone:  (617) 423-0400
Email: kcruickshank@murphyking.com

Dated:  September 16, 2020

Emergency Motion Exhibits, Page 45 of 71

UNITED STATES BANKRUPTCY COURT
EASTERN DIVISION, DISTRICT OF MASSACHUSETTS

| In re: | |
|---|---|
| Barry Wisner Chapin | Chapter 7 Case No. 20-10324-JEB |
| Debtor | |

MOTION FOR LEAVE TO SUBMIT SUR-REPLY
REGARDING TRUSTEE'S MOTION TO SELL THE DEBTOR'S HOMESTEAD

NOW COMES Barry Wisner Chapin, by his attorney, and respectfully moves the court for leave to submit a sur-reply memorandum concerning the trustee's motion to sell 34 Fairfield Street, Boston. For his sur-reply, he would argue as follows:

ARGUMENT

The issue presented, as the undersigned understands it, is whether the trustee should be allowed to sell the debtor's condominium unit at 34 Fairfield Street, Boston, without considering any marshaling issues. The debtor has objected on the basis of In re Traverse, 753 F. 3d 19 (1st Cir. 2014), because such a sale would adversely affect his state-law homestead exemption. Complicating the issue is the trustee's adversary proceeding seeking an order that the Internal Revenue Service and the Massachusetts Department of Revenue marshal their claims against his homestead instead of the other properties that the debtor owned, and the sale of which has either taken place or is imminent.

In his supplemental memorandum (docket number 309), the trustee takes the position that the court need not determine the marshaling issue before the sale takes place because there is no equity in the property to provide funding for a homestead exemption. That is not the issue and seems to reflect a misunderstanding of Traverse.

In Traverse, the First Circuit held that a chapter 7 trustee should not be allowed to sell a debtor's homestead if the sale would produce no benefit to the bankruptcy estate; the validity of the exemption was not disputed. Here, the trustee argues that there is no equity for the debtor, given that the amount of allegedly secured claims appears to exceed the reasonable fair market value of the property. If that is true, then there is also no equity in the property for the bankruptcy estate, either, since the bankruptcy estate comes after secured claims and exemptions. Admittedly, in Traverse, there was equity in the property above the mortgages, including the unperfected one. But the amount owed on those mortgages, plus the debtor's state law homestead, exceeded the fair market value of the property. Thus that distinction does not make a difference.

It is the debtor's position that marshaling should be employed against the other properties which, according to the trustee's memorandum, generated about #375,000, before any encroachment on his homestead, even assuming that encroachment is permissible. See Law v. Siegel, 134 S. Ct. 1188 (2014) (absent an explicit statutory authorization, a debtor's homestead exemption cannot be reduced for equitable reasons, no matter how bad an actor the debtor was).

Requiring marshaling before approving a sale is appropriate because the facts have not been sufficiently developed as to the various alleged liens and, respectfully, it appears that the trustee needs to do further research on the question of whether the alleged liens are actually perfected. A lien or mortgage that has not been perfected is avoidable by the trustee. See, e.g., Mbazira v. Ocwen Loan Serv., LLC (In re Mbazira), No. 13-16586-WCH, 2015 WL 1543908 (Bankr.D.Mass. Mar. 31, 2015) (Mbazira II), aff'd D. Mass. case no 15-cv-11682-IT, March 28, 2016, appeal pending at the First Circuit. In Mbazira, the mortgage had not been properly notarized and thus was not perfected even though it had been entered on the Registered Land Certificate of Title.

On page three of his memorandum, the trustee lists seven liens, but make no representation that he has investigated the validity of those liens or their avoidability. For example, the debtor has previously questioned whether the IRS liens[1] were perfected. In footnote 4 of his memorandum, the trustee states that the IRS liens were recorded in the Suffolk Registry of Deeds at book 56879, page, 71, and book 57251, page 5. In making that statement, the trustee no doubt is relying on information from the IRS, which is reasonable on the whole. However, there is a typographical error as to the first lien; the correct book number is 56849. That said, the IRS recorded a release of those liens on July 6, 2017; *see attached*. Furthermore, according to the Release, the property to which the liens attached was 62-6 Byron Road; Boston, although the Fairfield Street property is listed as his address. Given that the trustee alleges that the amount of the IRS liens is $304,039.44 as of the petition date, eliminating that amount from the sum total of the liens may very well create equity for funding the debtor's exemption, even if not for the estate.

As to the Massachusetts Department of Revenue, it appears that it recorded its tax liens against the Westborough condominiums, as well. Thus it is possible that the MDOR liens, which appear to total about $40,000, could be marshalled against the Westborough properties first, which would protect the debtor's homestead and possibly create equity for the exemption to attach to.

The trustee says on page 4 that "A debtor may exempt property only to the extent that the debtor has an interest in the property", *citing cases*. That is hardly a novel proposition. However, the debtor <u>does</u> have an "interest" in the property – fee simple. True it is that in Massachusetts, a mortgage is a conveyance of legal title to real property, but it is defeasible upon payment of money or of some other condition. <u>Perry v. Miller</u>, 330 Mass. 261 (1953). The mortgagor – in this case, the debtor – retains equitable title. <u>Bevilacqua v. Rodriguez</u>, 460 Mass. 762, 774 (2011). Thus, the debtor has an interest in the property that he may exempt.

What the trustee probably means is that absent equity, the debtor cannot claim an exemption. Leaving aside the fact that the debtor <u>did</u> claim an exemption and no party in interest has objected to that claim, that exemption will become final when the deadline to object passes. <u>Taylor v. Freeland & Kronz</u>, 503 US 638 (1992). The absence of equity to exempt, however, does not prevent claiming an exemption. <u>In re Kolich</u>, 273 BR 199 (8th Cir. BAP 2002); <u>In re Whitehead</u>, 226 BR 539 (Bkrtcy.W.D. N.Y. 1998); <u>In re Richardson</u>, 55 BR 526 (Bkrtcy.N.D.Ohio 1985) (all of which pertained to avoidance of a judicial lien even in the absence of equity).

The trustee's concern about a mortgagee being granted relief from stay and foreclosing is understandable. However, the Massachusetts Legislature enacted Chapter 65 of the Acts of 2020. Section 5(a) of the Act generally prohibits any action by "a creditor, mortgagee or person having estate in the land mortgaged" from commencing any action, *inter alia*, to foreclose a mortgage. That section will expire no later than 45 days after the Governor lifts the COVID-19 emergency declaration. *See* https://malegislature.gov/Laws/SessionLaws/Acts/2020/Chapter65. This includes even a Servicemember's Civil Relief Act proceeding. Thus, the debtor respectfully suggests that the trustee's concern is overstated at this point, it being unclear when the declaration will be lifted.

Wherefore the debtor requests that the trustee's motion be denied without prejudice to renewal, if appropriate, at a later time.

September 17, 2020

Respectfully submitted,
Barry Wisner Chapin,
By debtor's attorney,

/S/    *David G. Baker*
David G. Baker, Esq.
236 Huntington Avenue, Ste. 317
Boston, MA  02115
617-340-3680
BBO# 634889

---

[1] The debtor agrees with the trustee that marshalling may be asserted against governmental authorities.

2

Certificate of Service

The undersigned states upon information and belief that the within motion was served upon the entities named below by the court's CM/ECF system.

/S/    *David G. Baker*
David G. Baker

- Christopher M. Condon on behalf of Trustee Harold B. Murphy - ccondon@murphyking.com, jmccormack@murphyking.com; ecf-06e49f159ba0@ecf.pacerpro.com
- Kathleen R. Cruickshank on behalf of Harold B. Murphy, Chapter 7 Trustee - kcruickshank@murphyking.com, bankruptcy@murphyking.com; asavoia@murphyking.com; ecf-f3829d9f3bd3@ecf.pacerpro.com
- Elizabeth Dailey on behalf of Creditor Freedom Mortgage Corporation - bd@dgandl.com, rjl@dgandl.com; mbd@dgandl.com; bs@dgandl.com
- John Fitzgerald - USTPRegion01.BO.ECF@USDOJ.GOV
- Kevin Gaughen, Jr. on behalf of Creditor Hingham Institution for Savings - kevingaughenjr@gaughenlane.com
- Dean Lennon on behalf of Creditor Carlton Gardens Condominium Trust - dlennon@meeb.com
- Reneau J. Longoria on behalf of Creditor Freedom Mortgage Corporation - rjl@dgandl.com; bd@dgandl.com; mbd@dgandl.com; bs@dgandl.com
- Richard T. Mulligan on behalf of Creditor Freedom Mortgage Corporation - mabk@harmonlaw.com, rmulligan@ecf.courtdrive.com
- Harold B. Murphy, Chapter 7 Trustee - mxc@hanify.com, ma33@ecfcbis.com; dkonusevska@murphyking.com
- Richard B. Reiling on behalf of Creditor Linda Reyes-Flores - Reilinglaw@aol.com, richard@bottonereiling.com
- Ellen A. Shapiro on behalf of Creditor Board of Trustees of 32-34 Fairfield Street Condominium Trust - shapiro@goshlaw.com

Emergency Motion Exhibits, Page 48 of 71

## UNITED STATES BANKRUPTCY COURT
### EASTERN DISTRICT OF MASSACHUSETTS - BOSTON

===============================

IN THE MATTER OF:                    .   Case #20-10324
                                     .
BARRY WISNER CHAPIN,                 .    Boston, Massachusetts
                                     .   **September 29, 2020**
                         Debtor.     .   2:01 P.M.
===============================
HAROLD B. MURPHY, *Chapter 7*        .
*Trustee,*                           .
                                     .
                        Plaintiff,   .
                                     .
              v.                     .   AP #20-01050
                                     .
UNITED STATES OF AMERICA,            .
DEPARTMENT OF REVENUE,               .
                                     .
                      Defendant.     .
===============================

### TRANSCRIPT OF  ZOOM CONTINUED HEARING RE:
### [#223] MOTION OF CHAPTER 7 TRUSTEE OF SALE OF
### PROPERTY FREE AND CLEAR OF LIENS UNDER SECTION 363(f)
### RE: 34 FAIRFIELD STREET, APARTMENT 2, BOSTON,
### MASSACHUSETTS (KATHLEEN CRUICKSHANK);
### [240] LIMITED RESPONSE OF UNITED STATES OF
### AMERICA (BRADLEY SARNELL);
### [243] OBJECTION OF DEBTOR (DAVID BAKER);
### [#267] RESPONSE OF HINGHAM INSTITUTION FOR
### SAVINGS (KEVIN GAUGHEN);
### [#268] RESPONSE OF CHAPTER 7 TRUSTEE TO
### #243 (KATHLEEN CRUICKSHANK);
### [#269] LIMITED OBJECTION OF MASSACHUSETTS DEPARTMENT
### OF REVENUE (JOHN O'DONNELL);

Electronic Sound Recording Operator:  Brianna Hendry

Proceedings Recorded by FTR Gold Digital Recording
Transcript Produced by Certified Transcription Service

### CASCADE HILLS TRANSCRIPTION, INC.
**5001 Woodland Hills Drive, Eagle, Nebraska 68347**
**(503) 871-5566 - hagerruthann@aol.com**

**[#295] SUPPLEMENTAL STATEMENT OF CHAPTER 7
TRUSTEE (KATHLEEN CRUICKSHANK);
[#309] MEMORANDUM OF LAW OF CHAPTER 7
TRUSTEE (KATHLEEN CRUICKSHANK);
[#323] RESPONSE IN SUPPORT OF TRUSTEE'S MOTION
FILED BY UNITED STATES OF AMERICA (BRADLEY SARNELL);
[#227] APPLICATION OF CHAPTER 7 TRUSTEE TO EMPLOY
PAUL E. SAPERSTEIN AS AUCTIONEER (KATHLEEN CRUICKSHANK);
[228] APPLICATION OF CHAPTER 7 TRUSTEE TO EMPLOY
MICHAEL MORAN OF SOTHEBY AS BROKER (KATHLEEN CRUICKSHANK);
[45] MOTION OF CROSS-DEFENDANT UNITED STATES OF AMERICA,
DEPARTMENT OF THE TREASURY, INTERNAL REVENUE SERVICE
TO BE DISMISSED AS TO DEBTOR'S CROSSCLAIM (BRADLEY SARNELL);
[46] OBJECTION OF CROSS-CLAIMANT BARRY WISNER
CHAPIN (DAVID BAKER);
[51\ REPLY OF CROSS-DEFENDANT UNITED STATES OF AMERICA,
DEPARTMENT OF THE TREASURY, INTERNAL REVENUE
SERVICE (BRADLEY SARNELL)
BEFORE THE HONORABLE JANET E. BOSTWICK, J.U.S.B.C.**

**APPEARANCES:**

For the Board of Trustees of 32-34          ELLEN A. SHAPIRO, ESQ.
Fairfield Street Condominium Trust:          Marcus Errico Emmer Brooks
                                             45 Braintree Hill Office Park
                                             Suite #107
                                             Braintree, Massachusetts  02184

Electronic Sound Recording Operator:  Brianna Hendry

Proceedings Recorded by FTR Gold Digital Recording
Transcript Produced by Certified Transcription Service

**CASCADE HILLS TRANSCRIPTION, INC.**
**5001 Woodland Hills Drive, Eagle, Nebraska 68347**
**(503) 871-5566 - hagerruthann@aol.com**

*Page 3*
*#20-10324*
*AP #20-01050*
*September 29, 2020*

**APPEARANCES (Continued):**

For the Debtor:                          DAVID G. BAKER, ESQ.
                                         236 Huntington Avenue
                                         Suite #317
                                         Boston, Massachusetts  02115


For Hingham Institution for Savings:     KEVIN GAUGHEN, JR., ESQ.
                                         Gaughen, Gaughen Lane & Hernando, LLP
                                         528 Broad Street
                                         Weymouth, Massachusetts  02189


For Massachusetts Department of Revenue:  JOHN B. O'DONNELL, ESQ.
                                         Massachusetts Department of Revenue
                                         Litigation Bureau
                                         100 Cambridge Street
                                         PO Box 9565
                                         Boston, Massachusetts  02114


For Massachusetts Department of Revenue,  MICHAEL DENHAM, ESQ.
Child Support Enforcement Division:       Department of Revenue
                                          Child Support Enforcement
                                          PO Box 9561
                                          Boston, Massachusetts  02114


For the Chapter 7 Trustee:               KATHLEEN R. CRUICKSHANK, ESQ.
                                         HAROLD B. MURPHY, ESQ.
                                         One Beacon Street
                                         Boston, Massachusetts  02108



Electronic Sound Recording Operator:  Brianna Hendry

Proceedings Recorded by FTR Gold Digital Recording
Transcript Produced by Certified Transcription Service

**CASCADE HILLS TRANSCRIPTION, INC.**
**5001 Woodland Hills Drive, Eagle, Nebraska 68347**
**(503) 871-5566 – hagerruthann@aol.com**

**APPEARANCES (Continued):**

For the Government:                    BRADLEY SARNELL, ESQ.
                                       Department of Justice
                                       Tax Division
                                       PO Box 55
                                       Washington, D.C.  20044

For the Ferris Creditors:              BRIAN CHARVILLE, ESQ.
                                       325 Donald Lynch Boulevard
                                       Suite #200
                                       Marlborough, Massachusetts  01752

Electronic Sound Recording Operator:  Brianna Hendry

Proceedings Recorded by FTR Gold Digital Recording
Transcript Produced by Certified Transcription Service

**CASCADE HILLS TRANSCRIPTION, INC.**
5001 Woodland Hills Drive, Eagle, Nebraska 68347
(503) 871-5566 - hagerruthann@aol.com

1   (At 2:01 p.m.)

2          THE CLERK:  Court is now in session, the Honorable

3   Janet E. Bostwick presiding.

4          THE COURT:  Thank you, Ms. Cain.  We can begin.

5          THE CLERK:  Let's see.  20-10324, Barry Wisner

6   Chapin, continued hearing on the motion of the Chapter 7

7   Trustee for sale of property re: 34 Fairfield Street,

8   Apartment 2, Boston, Mass; continued hearing on the application

9   of Chapter 7 Trustee to employ Paul Saperstein as auctioneer

10  and continued hearing on the application of Chapter 7 Trustee

11  to employ Michael Moran of Southeby as broker.

12         Also, case number 20-01050, *Harold Murphy v. United*

13  *States of America, Department of the Treasury*.  Motion of

14  cross-defendant, United States of America, to be dismissed as

15  to debtor's crossclaim.  Would the counsel for the debtor

16  identify himself?

17         MR. BAKER:  Good afternoon.  David Baker for Barry

18  Chapin.

19         THE CLERK:  And counsel for the Chapter 7 Trustee.

20         MS. CRUICKSHANK:  Good afternoon, Your Honor.

21  Kathleen Cruickshank for Harold Murphy, the Chapter 7 Trustee

22  and I'm here with Mr. Murphy.

23         MR. MURPHY:  Good afternoon, Your Honor.

24         THE CLERK:  Counsel for the United States of America.

25         MR. SARNELL:  Good afternoon, Your Honor.  Bradley

1  Sarnell for the United States.

2          THE CLERK:  Counsel for Mass DOR, Child Enforcement

3  Division.

4          MR. DENHAM:  Good afternoon, Your Honor.  Michael

5  Denham for Mass DOR Child Support.

6          THE CLERK:  And counsel for Mass DOR?

7          MR. O'DONNELL:  Good afternoon, Your Honor.  Attorney

8  John O'Donnell on behalf of the Massachusetts Department of

9  Revenue, Tax Division.

10         THE COURT:  Counsel for Hingham Institution for

11 Savings.

12         MR. GAUGHEN:  Afternoon, Your Honor.  Kevin Gaughen,

13 Jr. for Hingham Savings.

14         THE COURT:  Counsel for the Ferris (phonetic)

15 Development Group.

16         MR. CHARVILLE:  Good afternoon, Judge.  Brian

17 Charville here for the Ferris creditors, thank you.

18         THE COURT:  Counsel for the Board of Trustees of the

19 Fairfield Street Condominium.

20         MS. SHAPIRO:  Good afternoon, Your Honor.  Attorney

21 Ellen Shapiro for the Board of Trustees.  Thank you.

22         THE CLERK:  And anyone else appearing on the case?

23         (No response.)

24         THE COURT:  All right.  Thank you all.  We continued

25 the hearing on the Trustee's motion for a sale.  I appreciate

1  all the submissions that came in.  It was very helpful for the

2  Court.  I've had an opportunity to review them, review the case

3  law, as well as review the prior hearing and I'm satisfied that

4  I'm prepared to address the motion to sell and the various

5  objections that have been raised.

6        So what I plan to do is give my preliminary rulings

7  with respect to the motion to sell.  I do have some questions

8  for the Trustee, but I will then turn to all the parties.  And

9  if there's something in response to the Trustee's -- the

10  Court's ruling or something not in your papers, I'll give each

11  of you an opportunity.  I'll ask, though, before I do so

12  address the adversary proceeding motion.

13        With respect to the motion to sell, I appreciate the

14  submissions and I'm satisfied that the Trustee has addressed my

15  issue and I am persuaded that I was wrong, that I do not need

16  to decide the marshaling first.  As the Trustee pointed out,

17  whether or not there's marshaling, there is little or no equity

18  for the debtor's homestead.

19        Having reviewed the various cases, as well as the

20  submissions, I also am satisfied that *Travers* does not prohibit

21  the Trustee from selling.  This is clearly a case where the

22  sale of this asset, whether or not there's marshaling, will

23  affect the various liens against other property.

24        So I believe there is good business judgment for the

25  Trustee to take action.  There is a potential for unsecured

1  creditors to receive something in the case.  It's not a

2  certainty, but that's not what's required.  If it was a

3  certainty there'd be no recovery, there might be a different

4  issue.  But until all of these issues are resolved, and I can

5  see they are quite complex, understanding the various

6  interrelations, I think that the Trustee's decision to move

7  forward with a sale is appropriate.

8          I also take into account that while I do recognize

9  this is the debtor's home, there is a problem.  There is

10 accruing expenses here.  Unlike some of the parties, I don't

11 attribute any inequitable conduct to the debtor.  As Mr. Baker

12 pointed out, it may be as simple as the debtor doesn't have the

13 funds to pay the amount.

14          But nevertheless, that interest is accruing.  I know,

15 for example, in Hingham at least more than 15,000 has accrued

16 since in the last few months because of interest in cost and

17 the like and they will continue to erode and that arose the

18 ability to pay other lenders who -- or creditors who have liens

19 on other properties and, thus, impact the estate.  So I am

20 satisfied that the motion is a proper exercise of the Trustee's

21 business judgment and with the clarification on a few questions

22 I'm prepared to move forward.

23          With respect to the responses by the various

24 creditors, there are issues where certain of the taxing

25 authorities and certain other insisted on payment in full at

1 the closing.  I believe it's clear that the tax liens are in

2 dispute in a couple of respects.  That simply -- the marshaling

3 is an issue.

4      I also think there is an issue on the penalties.  The

5 taxing authorities have cited Hannon and they are correct that

6 Judge Hillman made a ruling as to how the Trustee could impact

7 tax liens with penalties.  But I don't believe that's the final

8 decision.  There are cases to the opposite including *Tillman*

9 out of the District -- Bankruptcy Court in Arizona.  So I

10 believe that issue is one that will need to be later resolved.

11      And so while I am prepared to go forward with the

12 sale and find that the Trustee may sell and hold the proceeds

13 in escrow subject to all the liens and the priority, because I

14 do believe there are issues on that, with the exception there

15 seems to be no dispute that Hingham should be paid from the

16 closing.

17      I'd also qualify that if the Trustee and the

18 Condominium Association, the taxing authority can resolve

19 whether condo fees are entitled to priority that that could be

20 paid.  I do have some questions for the Trustee on the sale and

21 the applications.  It's a little unusual as to what's going

22 forward.

23      In terms of the motion in the adversary proceeding I

24 am going to continue that matter to reset it after the IRS

25 files its answer or motion to dismiss with respect to the

1  Trustee's complaint.  The reason is in -- that motion is

2  premised on sovereign immunity, which the IRS intends to assert

3  against the Trustee unless the Trustee and the -- and the IRS

4  reach an agreement.  So rather than -- I'm not going to

5  hamstring the issues by deciding the issue now when the Trustee

6  is not involved.  It seems to me to decide that all at once.

7         The IRS may decide in -- to answer and not assert

8  sovereign immunity at that point.  It may also -- the IRS may

9  also reach an agreement with the Trustee and at that point we

10 would separately reset this for hearing, but I think to hear it

11 now is premature.

12        In that context, however, I do think and I appreciate

13 why the IRS delayed and requests delays on its answer, but I

14 think the time has come to move that litigation forward and the

15 only way to do so is with respect to a -- to have an answer

16 from the IRS.

17        And so -- or a motion to dismiss, so I am going to --

18 I did allow an extension, but I'm not going to allow any

19 further extensions on the answer so we can move that litigation

20 forward.

21        And we've had -- as I said, that's -- I will allow

22 the parties another opportunity if there's something not in the

23 papers or something specific you want to address briefly in

24 terms of the Court's rulings, but let me -- I will give you

25 each an opportunity.

1          So with that, Ms. Cruickshank, in terms of your

2     motion to sell, it is a little unusual to have both an

3     auctioneer and a broker and so I did read -- and there were no

4     objections to that.  Am I correct that in assets, even though

5     you have the two parties, the maximum expense is a commission

6     of roughly five percent?

7          MS. CRUICKSHANK:  That's correct, Your Honor.

8          MR. MURPHY:  Yes, Your Honor.  Maybe I could speak --

9     Harold Murphy -- just a little bit.  You're right, Your Honor.

10    This is a little different than what we would normally do.

11    See, as Your Honor notes, probably one or the other, not both.

12    And the reason why we're thinking about both is at the time

13    this was filed -- and I think it remains the same -- obviously

14    COVID has created a lot of uncertainty about people's ability

15    to get into units.  Obviously we've got to be sensitive to the

16    debtor's concerns.  He is living in the residence.

17          Mr. Moran is a very experienced back-pay (phonetic)

18    downtown broker and I wanted to try to -- try to offset the --

19    what appeared to be at the time when we put this together the

20    potential offset concerns about the state of the market with

21    having a downtown broker just opposed to Mr. Saperstein who

22    would be selling from a sidewalk, Your Honor.

23          Obviously this may require some degree of cooperation

24    between the debtor and Mr. Baker -- I know Mr. Baker will be

25    cooperative -- but try to work together here to maximize the

1  recovery and be sensitive to the debtor at the same time.  I

2  think there was a feeling as well that there's a lot of -- the

3  unit could do with a -- some straightening out I think to

4  maximize the value.  And I think the appeal would be is that

5  between Mr. Moran and Mr. Saperstein and the debtor we can work

6  together here to maximize because all these liens -- I think,

7  Your Honor, the junior liens on this property I think all are

8  non-dischargeable.  So I think it should be in everyone's

9  interest here to try to do that and that was the thinking

10 behind it.

11         The thinking is, is that frankly the real estate

12 market I think has been stronger certainly in some respects,

13 certainly in the suburbs.  I don't have a good read yet.  I

14 haven't spoken to Mr. Moran in the last few weeks.  But the

15 real estate market does seem to be pretty strong, so -- but I

16 still think it makes sense to use both these professionals to

17 try to get the maximize value here.

18         THE COURT:  Okay.  Thank you, Mr. Murphy.  I

19 appreciate that.

20         And is it your contemplation, although you're

21 planning to do this by public sale, would you then come back

22 for the Court to ratify the buyer or are you assuming that my

23 order authorizing the auction will be sufficient?  Perhaps

24 Miss -- either you or Ms. Cruickshank.

25         MR. MURPHY:  I think -- I think we were intending to

1  run it like an auction, but the sale -- the sale -- the

2  autho -- authorized in this motion, Your Honor, would authorize

3  the Trustee to take the highest bid at the auction and close to

4  the next highest bidder if the first doesn't close.

5          Again, the rationale to do it was auction at the time

6  was for the reasons Your Honor stated, which is we are accruing

7  a lot of liabilities on the property with the interests in

8  condo fees, insurance, et cetera.  And we thought that it made

9  sense to move quickly here.  We didn't want to get stuck in the

10  winter, et cetera.

11          So our sense is to do a pretty fulsome marketing

12  effort, you know.  It's probably going to be 45 days before the

13  actual auction.  So right away we're already talking to try to

14  get a sale done before Thanksgiving, Your Honor.  So we would

15  anticipate, if Your Honor would permit, as the sale order would

16  authorize us to sell to the high bidder at auction without the

17  necessity going back to court.

18          THE COURT:  And that would be fine.  I just wanted to

19  clarify.  I do think that once you pick the -- perhaps what we

20  do is have you file a statement once you've set the auction.

21  So it's on record and typically I do require after the sale an

22  appropriate report as to the sale occurred.  But --

23          MR. MURPHY:  Understood, Your Honor.

24          THE COURT:  All right.  All right.  Thank you,

25  Mr. Murphy.

1          So with that, let me then turn to Mr. Baker.  If

2     there is anything -- as I said, I've read your pleadings and

3     I've reviewed the case law you've cited.  If there's anything

4     you wish to add or any comments you wish to make as to the

5     Court's rulings.

6          MR. BAKER:  I'll -- excuse me -- only that we find

7     that all this -- what we -- what I said in the briefs it's a

8     particularly difficult situation since Mr. Chapin is unemployed

9     at this point, has no one come and selling his home is likely

10    to leave him homeless.  So it's something we have to consider

11    when we move -- try to move forward here.

12         But I appreciate the Court's take on the -- on the

13    situation and we'll just have to sit back and figure out what

14    to do.  Thank you.

15         THE COURT:  Okay.  Thank you, Mr. Baker.  And as I

16    made clear, I'm not -- the issue of whether if there is any

17    impact of marshaling with respect to the homestead that still

18    remains.  But I believe -- as I said, I believe there is little

19    left for the -- even if the Trustee doesn't marshal against

20    this particular property.

21         Okay.  And with respect to your -- and that is, in

22    fact, you are seeking to marshal the lenders as -- or not the

23    lenders but tax creditors against others.  Again, that issue

24    will remain.  In essence, will reduce -- the assets will be

25    reduced.  The rights are preserved as to the priority and

1 whether or not marshaling applies.

2          So with that --

3          MR. BAKER:  Noted.  Thank you.

4          THE COURT:  Mr. Sarnell?  Again, I've read -- I've

5 appreciated the IRS's responses.  They were helpful, although I

6 didn't agree with everything.  And, as I said, I -- if there's

7 anything you wish to add, either with respect to the sale or

8 the cross-motion, as I said, I think that at this point since

9 it's substantial you'll raise that issue in the context of the

10 complaint.  We'll defer it and your answer is due October 9th

11 and after.  If you file an answer on motion to dismiss

12 depending on what's raised, well, then reschedule everything.

13          MR. SARNELL:  I suppose I have two things, Your

14 Honor.  This is Bradley Sarnell for the United States.  First

15 question would be about whether the Court is going to set a

16 briefing schedule on the priority issue I guess with regard to

17 whether the penalties have to be paid out.  I believe that was

18 the Court's concern.

19          THE COURT:  I think that -- the way typically the

20 Trustee will file the -- the order will provide that the

21 proceeds be held in escrow and then while the parties have an

22 opportunity to resolve it and if not, once the Trustee will ask

23 a motion to disburse the proceeds and we'll determine it in

24 that context.

25          So I'm not making a determination.  If the parties

1    agree on the issue then I don't need to; if they don't agree,

2    then it will be raised in the context of a motion by the

3    Trustee to disburse the funds and we'll set if needed a

4    briefing schedule at that point.

5           MR. SARNELL:  Understood, Your Honor.  And with

6    regard to the crossclaim today, I understand Your Honor's

7    concern about having these all dealt with sort of

8    simultaneously, but it seems like the United States's concerns

9    or -- I guess I suppose somewhat different that if the Trustee

10   gets authority to sell the property, which it appears Your

11   Honor is going to grant, and wants to pay the United States,

12   there's no sovereign immunity concern, but there would, I

13   guess, be a concern potentially if the United States is asked

14   to marshal outside of bankruptcy or any other direction.  It

15   would seem, at least to the Government, these two issues are

16   somewhat separate, that there doesn't seem to be much of a

17   concern about whether the debtor can require marshaling.  It

18   seems like there's absolutely no waiver and that's a totally

19   different issue from what the Trustee can do it.  That's sort

20   of whether or not --

21          THE COURT:  That's not -- I -- let me address that.

22   When I read your response, you said the ability of the

23   debtor -- the complaint determines the ability of a cross-

24   complaint.  Therefore, if you're going to later challenge the

25   Trustee's complaint on the basis of sovereign immunity, we

1   should decide that issue at the same time.  You did -- it --

2   when I read it, I read your issue to be sovereign immunity and

3   that it couldn't be asserted by any party.  And I agree with

4   you.  You may chose not to raise that with the Trustee because

5   you have resolved your issues, but I'm not going to make a

6   ruling in the case and then have you turn around and say, well,

7   Judge, you already ruled on that, you know, therefore the

8   Trustee is completed.

9          There are aspects of the cross-motion that are

10  different, but they weren't raised in your -- they aren't

11  determined in your motion to dismiss.

12         MR. SARNELL:  I suppose -- I don't know that I agree

13  that they weren't -- that they weren't addressed, that there

14  needs to be a -- there needs to be a separate waiver for a

15  crossclaim against the Government or counterclaim against the

16  Government.  A cross-claimant can't piggyback off of any

17  potential jurisdiction that the original claim would have.

18  That's sort of black letter law with regard to suing the United

19  States.  With regard to whether the Trustee may have standing

20  that doesn't grant a cross-claimant or counter-claimant

21  standing.

22         THE COURT:  You do intend -- you do reserve your

23  right to raise sovereign immunity against the Trustee, correct?

24         MR. SARNELL:  Yes.

25         THE COURT:  Okay.  That answers my question.  Thank

1  you.

2         MR. SARNELL:  Understood.  Thank you, Your Honor.

3         THE COURT:  All right.  All right.  Mr. Denham,

4  anything you wish to add or comment on?

5         MR. DENHAM:  Michael Denham for Mass DOR Child

6  Support.  Nothing to add, Your Honor.

7         THE COURT:  Mr. O'Donnell?

8         MR. O'DONNELL:  John O'Donnell for the DOR.  Nothing

9  at this time, Your Honor.  I think you've addressed everything

10 for now with respect to DOR's concerns.

11        THE COURT:  Okay.  Mr. Gaughen, did I -- I -- if I

12 mispronounce that, I apologize.  I am consistent, I assume.

13        MR. GAUGHEN:  You've got it right, Your Honor.  Kevin

14 Gaughen for Hingham Savings.  We have nothing to add.  We're

15 concerned with the timing, but I think that the timeline set by

16 the Trustee of the 45 days will hopefully get this resolved

17 very shortly.

18        THE COURT:  Okay.  And I do know, Mr. Gaughen,

19 although we haven't set it (phonetic), you've renewed your

20 motion for relief?

21        MR. GAUGHEN:  Yes, Your Honor.  The moratorium is due

22 to expire October 17th, so we filed it about 30 days before the

23 expiration.  I think the objection period is tomorrow, but

24 obviously that is -- is -- was made with the intention of the

25 Trustee's motion to sell so that the -- enough time would be

1  allowed so that that motion could be heard in a reasonable

2  basis to get the property sold.

3          But if the Court is inclined to allow the Trustee's

4  motion to sell, I -- if -- I mean, that -- Hingham Savings will

5  be doing the same thing the Trustee is selling, selling it with

6  Paul Saperstein's auctioneer company, so --

7          THE COURT:  So --

8          MR. GAUGHEN:  -- in that respect I mean, it's -- I

9  think we'd ask that the Court keep that open if for some reason

10 the property is not sold by the Trustee.

11         THE COURT:  Okay.  So you would like to leave it on

12 the record, but not -- you're not looking -- you would waive an

13 immediate hearing?

14         MR. GAUGHEN:  Yes, Your Honor.  Perhaps if the

15 hearing could be put on for after the sale date.  It doesn't

16 sound like that motion will be necessary, but I did want to

17 meet the appropriate timelines and time frames and things like

18 that.

19         THE COURT:  Okay.  All right.  And I'll just circle

20 back to Ms. Cruickshank, as I'm assuming the Trustee is going

21 to file a response.

22         All right.  Mr. Charville.

23         MR. CHARVILLE:  No comment, Judge.  Thanks so much.

24         THE COURT:  Ms. Shapiro?

25         MS. SHAPIRO:  I'm sorry, I don't know if I was on

1  mute.  I was unmuting.  I have no comment either, Your Honor,

2  thank you.

3          THE COURT:  Okay.  Thank you.  All right.

4          What we will -- Ms. Cruickshank, let me circle back

5  to you.  I'm assuming you will be responding to the motion for

6  relief?

7          MS. CRUICKSHANK:  Yes, Your Honor.  If -- with

8  consent of counsel, we'd like to get an extension of the

9  deadline to respond.

10          MR. MURPHY:  We'll work that out with --

11          MS. CRUICKSHANK:  Yeah, but we'll work that out with

12  counsel.

13          THE COURT:  Okay.  If you work that out with counsel

14  and then what we will do, we haven't set up our -- our December

15  dates, but it sounds like what makes sense that -- why don't

16  you work out an extension?  We typically don't set that for

17  hearing until after a response is filed.  As part of your

18  extension if there'd be a waiver of the -- I don't know if

19  there's 30 or 60 days, but waiver of the applicable deadline so

20  that we don't run into timing issues and then consistent with

21  what you've said in the Trustee's outline, we would set it most

22  likely at a later date, later after the proposed sale.

23          All right.  So with that, Ms. Cruickshank, if -- I

24  will allow -- as I stated, I will allow the motion for sale and

25  provide the Trustee may conduct the sale by public auction

1  authorized to sell to the highest bidder and close, hold the

2  proceeds in escrow subject to a later determination, further

3  order of the Court, either on request of the Trustee or if any

4  creditor seeks they can seek a determination prior to that from

5  the sale proceeds, disburse the sales proceed to Hingham for

6  closing costs for the auctioneer and broker.  And  I will allow

7  the application to employ Mr. Saperstein subject to

8  compensation being approved in the context of -- I guess I

9  typically allow it's subject to the applica -- the employment

10 for most -- I guess Mr. Saperstein will be subject to a later

11 approval with Mr. Moran.

12        I normally allow the application subject to later

13 approval in a sale.  This is sort of all at the same time.  So

14 I think what I will do is require after the sale that you

15 submit how much you're paying for the commission and the

16 auctioneer so that we can approve that.

17        And I will ask as part of that that the Trustee upon

18 determining when the auction just post -- I guess, let me look

19 at the motion.  Did you give me a notice of sale,

20 Ms. Cruickshank?

21        MS. CRUICKSHANK:  Yes, Your Honor.

22        THE COURT:  But it didn't have the sale date,

23 correct?

24        MS. CRUICKSHANK:  We didn't have an auction date

25 because we wanted to get to the hearing before we set this,

1 Your Honor.  We could prepare a new one if you -- once we set

2 it, if that is what Your Honor had in mind.

3          THE COURT:  I had in mind something so everybody

4 knows when the auction is, you know.  It seems to me that --

5          MR. MURPHY:  Well, the notice with --

6          MS. CRUICKSHANK:  Yeah.  We --

7          MR. MURPHY:  Your Honor, let me consult with

8 Mr. Saperstein and Mr. Moran and pick the auction date and

9 we'll file a notice of intended sale with those dates set forth

10 in it, so it will be public record --

11          THE COURT:  Yeah.

12          MR. MURPHY:  -- within the case.

13          THE COURT:  That would be perfect, Mister -- I think

14 that will address it.

15          And then whenever the auction date is, perhaps a -- I

16 never remember which the rules are, but if you can file a

17 report within 15 days after as to the results of the auction,

18 the bidder and the proceeds.

19          MR. MURPHY:  Yes, Your Honor.

20          MS. CRUICKSHANK:  Yes.

21          THE COURT:  Okay.  All right.  So Ms. Cruickshank,

22 can you submit a proposed order for the Court updated to

23 reflect those on the motion to sell within a week?

24          MS. CRUICKSHANK:  I think we could submit it by

25 Friday, Your Honor.

1          THE COURT:  By Friday?

2          MS. CRUICKSHANK:  Yeah.

3          THE COURT:  That's fine.  All right.  All right.  So

4    we'll do that and then be back on both the applications in

5    terms of the motion for cross-defendant.  We will continue that

6    matter pending to be rescheduled after the IRS files their

7    response to the complaint.

8          All right.  Thank you.  Thank you all.  I appreciate

9    your efforts on this.  And with that, this hearing --

10         MS. CRUICKSHANK:  Thank you, Your Honor.

11         THE COURT:  -- is concluded.

12         ATTORNEYS:  Thank you, Your Honor.

13   (End at 2:31 p.m.)

14                    * * * * * * * *

15         I certify that the foregoing is a true and accurate

16   transcript from the digitally sound-recorded record of the

17   proceedings.


                                   _10/29/2020_

**RUTH ANN HAGER**
**Certified Transcriber**
     **Federal C.E.R.T. **D-641**
**CASCADE HILLS TRANSCRIPTION, INC.**
5001 Woodland Hills Drive
Eagle, Nebraska 68347
(503) 871-5566
Email: hagerruthann@aol.com